THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: <br><br> DIAMONDHEAD CASINO CORPORATION <br><br> Alleged Debtor. | ) ) ) ) ) ) ) ) | Chapter 7 <br> Case No. 24-11354 (JKS) |
| DIAMONDHEAD CASINO CORPORATION <br><br> Appellant, <br><br> v. <br><br> EDSON ARNEAULT, et al., <br><br> Appellees. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:25-cv-1018-MN |
| EUROPA CRUISES CORPORATION STOCK OWNERSHIP PLAN,) <br> Appellant, <br> v. <br><br> EDSON ARNEAULT, et al., <br><br> Appellees. | ) ) ) ) ) ) ) ) ) ) | Case No. 1:25-cv-1021-MN |
| DEBORAH A. VITALE <br><br> Appellant, <br><br> v. <br><br> EDSON ARNEAULT, et al., <br><br> Appellees. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:25-cv-1022-MN |

## DEBORAH A. VITALE'S
## STATEMENT OF THE ISSUES TO BE PRESENTED ON APPEAL

Deborah A. Vitale ("Appellant"), pursuant to Federal Rule of Bankruptcy Procedure 8009 and Local Rule 8009-1, hereby submits the following Statement of the Issues to be Presented on Appeal.

1. Whether the trial court clearly erred in finding that the Debtor's September 2024 Form 10-Q "lists the value of its land holdings at $4,691,430," when the Form 10-Q explicitly states that this number represents the "**cost** of land held for development," not the value of its land holdings. (Emphasis added.)

2. Whether the trial court clearly erred in taking judicial notice of and relying on the book value of the Debtor's land holdings, an issue in dispute.

3. Whether the trial court clearly erred in taking judicial notice of and relying on the book value of the Debtor's land holdings, an issue in dispute, in conducting an insolvency analysis.

4. Whether the trial court clearly erred in taking judicial notice of and relying on the book value of the Company's land holdings, an issue in dispute, instead of the uncontradicted testimony and exhibits introduced by both parties, in determining fair market value of the Company's land holdings.

5. Whether the trial court clearly erred in failing to find that the Bankruptcy Court was used by Petitioners for an improper purpose, namely, to circumvent a Land Deed of Trust, which expressly provided for a judicial foreclosure action in Mississippi in the event of a default, identified the procedures to be followed in the event of a default, and specifically named the Mississippi Trustee, who would handle any sale in the event of a default.

6. Whether the trial court clearly erred in finding, based on the argument of the Petitioners in their answering brief, that the Debtor, in its post-trial Opening Brief, abandoned its argument that the Petition was filed in bad faith because the Petitioning creditors breached the Land Deed of Trust, when the Debtor's post-trial Opening Brief proves otherwise.

7. Whether the trial court clearly erred in finding that "no evidence was presented regarding the Land Deed of Trust" when the Land Deed of Trust was admitted in evidence as Joint Exhibit 8 of the parties.

8. Whether the trial court clearly erred in failing to dismiss the Petition, inasmuch as state law remedies were available for Petitioners to collect their debt, including one in Mississippi, which Petitioners previously agreed to use in the event of any default.

9. Whether the Petition should have been dismissed inasmuch as Petitioners admitted it had been filed to collect a debt, an improper bankruptcy purpose, constituting bad faith.

10. Whether the Court clearly erred in granting Chapter 7 Relief, which would not serve to maximize the value of any assets of the estate for the Debtor's creditors, but would serve only to diminish them.

11. Whether the trial court clearly erred in finding that a Chapter 7 was in the better interest of all stakeholders, including the Petitioners, the Debtor, its creditors, its former employees, and its shareholders.

12. Whether the trial court clearly erred, as a matter of fact and of law, in finding that the payment or accrual of salary, rent, or interest, or the reimbursement of business expenses, was a dissipation of assets.

13. Whether the trial court clearly erred in finding, if it did, that there was a dissipation of assets of the Debtor, based on a subsidiary's payment of $20,000 to each of two unrelated third-parties, who loaned money to the subsidiary upon express condition that they be immediately repaid from the proceeds of a potential eminent domain settlement.

14. Whether the trial court clearly erred in finding that this case involved a corporation with depleting assets when any alleged reduction in assets was due to the payment of ordinary business expenses or obligations or accounting-related adjustments.

15. Whether the trial court clearly erred in finding there was some evidence of "dissipation of assets," an issue in dispute, by taking judicial notice of entries in three of the Company's Form 10-Q's from December 31, 2023 through September 30, 2024, which dealt with the legitimate use of cash for normal business operations, the payment of ordinary business expenses or obligations, or accounting-related adjustments.

16. Whether the trial court clearly erred in finding that a Chapter 7 was necessary in this case when the Debtor was not insolvent.

17. Whether the trial court clearly erred in finding that the Petition was filed in good faith and that the Petitioners entered the equity court with clean hands when the Petition was filed in retaliation for the Debtor's refusal to comply with Petitioners' unreasonable demands for one hundred percent (100%) of the eminent domain funds which had been awarded to a subsidiary of the Debtor by the Special Court of Eminent Domain, Hancock County, Mississippi, in an eminent domain proceeding.

18. Whether the trial court clearly erred in failing to dismiss the Petition, given Petitioners' admission that they would not have filed the Bankruptcy Petition had the Debtor agreed to pay $50,000 in additional attorneys' fees, after the Debtor had already agreed to pay

4

$175,000 in attorneys' fees only *sixty-two days earlier* to settle *Arneault, et al. v. Diamondhead Casino Corporation* (In the United States District Court for the District of Delaware)(C.A. No. 1:16-cv-00989-LPS). Whether the unreasonable demand for more attorneys' fees proves that the Petitioners were not concerned about any payment of preferences or dissipation of assets; that the Petition was not filed in good faith; and that the Petition was filed in retaliation for the Company's refusal to pay even more attorneys' fees.

19. Whether the court clearly erred in finding that the Company did not argue that the timing of the Involuntary Petition was suspicious, when the record proves otherwise.

20. Whether the trial court clearly erred, after denying Debtor' motion to dismiss the Petition, in also denying Debtor the right to convert the case to a Chapter 11, inasmuch as the case had not previously been converted.

21. Whether the trial court clearly erred in failing to dismiss the Petition or permitted the Company to convert to Chapter 11 to resolve important, unsettled issues with respect to two permanent eminent domain easements.

22. Whether the Bankruptcy Court clearly erred in failing to dismiss the Petition, inasmuch as Petitioners' <u>admitted</u> disregard for the impact the filing of the Petition would have on the publicly traded Company, its stock price, the shareholders, the other creditors, and the Company's former employees, constituted bad faith.

23. Whether the trial court clearly erred in relying on the mere argument of counsel for Petitioners, where evidence of record was utterly lacking or non-existent.

24. Whether, as a matter of law, given the evidence of record, the Involuntary Chapter 7 Petition was filed in bad faith, warranting *de novo* review.

25. Whether the Bankruptcy Court clearly erred, given the totality of circumstances, in failing to find bad faith and dismissing the Petition under 11 U.S.C. §303(a)(1) and 11 U.S.C. §303(i).

26. Whether the trial court clearly erred in finding that it had jurisdiction over the largest Petitioner, *J. Steven Emerson, as Successor to Steven Emerson Roth IRA*, when this Petitioner was not a debenture holder as claimed, had never sued the Debtor as claimed, was not a judgment creditor as claimed, had no assignment of a debenture, and had no valid claim against Debtor.

27. Whether the trial court clearly erred in refusing to amend its Opinion [D.I. 42] and Order [D.I. 43] to show that the largest Petitioner, *J. Steven Emerson, as Successor to Steven Emerson Roth IRA,* was not a debenture holder, had never sued the Debtor, was not a judgment creditor, had no assignment of a debenture, and had no valid claim against Debtor when the Petition was filed.

28. Whether the trial court clearly erred in refusing to amend its Opinion [D.I. 42] and Order [D.I. 43], based on evidence showing that the Petitioners and counsel for Petitioners colluded to manipulate diversity jurisdiction and perpetrated a fraud on the United States District Court for the District of Delaware and then used that fraudulently-obtained judgment as grounds to file a Petition in the Bankruptcy court.

29. Whether the trial court clearly erred in allowing Petitioners and counsel for Petitioners to file a Chapter 7 Involuntary Petition based on a fraud on the Court.

30. Whether the trial court clearly erred in finding that Petitioners and counsel for Petitioners could file a Chapter 7 Involuntary Petition against a Debtor based on a fraud on the Court

and do so with impunity so long as the Debtor failed to discover the fraud within twenty-one days of the date of service of the summons on the Debtor.

31. Whether the trial court clearly erred in finding that the Petitioners and counsel for the Petitioners, who filed a Petition based on a fraud on the Court, nevertheless, came into the Bankruptcy court in good faith and with clean hands because the Debtor failed to discover the fraud within twenty-one days of the date of service of the summons on the Debtor.

32. Whether the trial court clearly erred in finding that the Petitioners and counsel for the Petitioners, who filed a Petition based on a debenture which did not even exist, and who continued to make false statements of fact in pleadings filed with the Bankruptcy Court throughout the case, came into the bankruptcy court in good faith and with clean hands.

33. Whether the trial court clearly erred in finding that the Petitioners and counsel for the Petitioners, who knowingly filed a Petition based on a debenture which did not even exist and whose conduct fell within the scope of bankruptcy fraud as defined by 18 U.S.C. §157, nevertheless, came into the bankruptcy court in good faith and with clean hands.

34. Whether the trial court clearly erred in finding that the Petitioners and counsel for the Petitioners, who filed a Declaration which falsely claimed that the largest Petitioner, *J. Steven Emerson, as Successor to Steven Emerson Roth IRA*, was the Holder of a debenture, when it was not, and that a copy of the debenture was attached as Exhibit B to the Declaration of Petitioner, Edson Arneault, when it was not, inasmuch as it never existed, came into the bankruptcy court in good faith and with clean hands.

35. Whether the trial court clearly erred in allowing the Petitioners and counsel for Petitioners to file a Petition on behalf of the largest Petitioner, *J. Steven Emerson, as*

*Successor to Steven Emerson Roth IRA*, which they knew had no basis in fact, with absolutely no consequences whatsoever.

36. Whether the trial court clearly erred in refusing to dismiss the case based on bad faith after learning that the largest Petitioner, *J. Steven Emerson, as Successor to Steven Emerson Roth IRA*, was not a debenture holder, had never sued the Debtor, was not a judgment creditor, had no assignment of a debenture, and had no valid claim against Debtor as claimed.

37. Whether the lower court clearly erred in finding that the largest Petitioner, *J. Steven Emerson, as Successor to Steven Emerson Roth IRA*, and counsel for the Petitioner, had filed a Petition in good faith when the Petitioner violated the express terms of the securities (debentures) and the Securities Act of 1933.

38. Whether the trial court clearly erred, post-judgment, in failing to grant Debtor's motion for a stay pending a resolution of the appeal given the legal standard applicable to such a determination and given the fraud on the Bankruptcy Court.

39. Whether the trial court erred in finding that a fraud on the Bankruptcy Court was governed by Bankruptcy Court Rule 1011(b), which requires that a *responsive* pleading in an involuntary case shall be filed within twenty-one days after service of the summons rather than Rule 60 of the Federal Rules of Civil Procedure which deals with post-judgment relief.

40. Whether the trial court erred in failing to grant the Motion of Deborah A. Vitale for Leave to Intervene and be Heard in the Above-Captioned Case, pursuant to Federal Rule of Bankruptcy 2018(a).

Dated:   September 17, 2025

                                                        Respectfully submitted,
                                                        <u>/s/ Deborah A. Vitale</u>
                                                        Deborah A. Vitale
                                                        1013 Princess Street
                                                        Alexandria, VA 22314
                                                        Telephone: (727) 510-1412
                                                        Email: vitaledav@aol.com
                                                        Appellant Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, Deborah A. Vitale's Statement of the Issues to be Presented on Appeal, was served, via United States mail, postage prepaid, this 17th day of September 2025, on the following:

Jonathan M. Stemerman, Esquire
Armstrong Teasdale, LLP
1007 N. Market Street, 3rd Floor
Wilmington, DE 19801

Robert D. Goldberg
Biggs & Battaglia
921 N. Orange Street
Wilmington, DE 19899-1489

Bradford J. Sandler
Pachulski Stang Ziehl & Jones
919 North Market Street, 17th Floor
Wilmington, DE 19801

George L. Miller
Miller Coffey Tate LLP
8 Penn Center
1628 John F Kennedy Blvd. #950
Philadelphia, PA 19103

/s/ Deborah Vitale
Deborah Vitale