IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| DIAMONDHEAD CASINO CORPORATION, | ) | Case No. 24-11354 (JKS) |
| | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| DEBORAH A. VITALE, | ) | |
| | ) | |
| Appellant, | ) | C.A. No. 25-1022 (MN) |
| v. | ) | C.A. No. 25-1167 (MN) |
| | ) | |
| EDSON ARNEAULT, *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

**<u>MEMORANDUM OPINION</u>**

Deborah A. Vitale, Pro Se Appellant, Alexandria, VA.

Jonathan M. Stemerman, Armstrong Teasdale LLP, Wilmington, DE – Attorneys for Petitioning Creditors[1]

December 3, 2025
Wilmington, Delaware

---

[1]   The Petitioning Creditors are Edson Arneault, Kathleen and James Devlin, J. Steven Emerson, Emerson Partners, J. Steven Emerson as Successor to Steven Emerson Roth IRA, John Hawley as Servicing Agent for Argonaut 2000 Partners, L.P., Steven Rothstein, and Barry and Irene Stark.

*Maryellen Noreika*

**NOREIKA, U.S. DISTRICT JUDGE**

This dispute concerns the involuntary chapter 7 case filed by appellees ("the Petitioning Creditors") against Diamondhead Casino Corp. ("Diamondhead" or "the Debtor"). Pending before the Court are the Emergency Motions for Stay Pending Appeal (C.A. No. 25-1022-MN, D.I. 14; C.A. No. 25-1167-MN, D.I. 7) ("the Emergency Stay Motions") filed by pro se appellant Deborah Vitale seeking to stay the *Order for Relief in an Involuntary Case* (Bankr. D.I. 45)[2] ("the Order for Relief"), entered by the Bankruptcy Court on July 31, 2025, pending Appellant's appeal of the Order for Relief and several related rulings by the Bankruptcy Court. Appellant's main argument is that the Petitioning Creditors' claims against the Debtor are based on a consent judgment between Diamondhead and the Petitioning Creditors which should be vacated. The Court has considered the Bankruptcy Court's Opinion in support of the Order for Relief, *In re Diamondhead Casino Corp.*, 2025 WL 2169864 (Bankr. D. Del. 2025) ("the Opinion"), along with its September 3, 2025 bench ruling. The Court has further considered Appellant's opening brief, declaration, and reply in support of the Emergency Stay Motions (C.A. No. 25-1022-MN, D.I. 15, 16, 20; C.A. No. 25-1167-MN, D.I. 8, 9, 12), along with the Petitioning Creditors' opposition thereto (C.A. No. 25-1022-MN, D.I. 18; C.A. No. 25-1167-MN, D.I. 11).[3] For the reasons set forth herein, the Court will deny the Emergency Stay Motions.

---

[2]     The docket of the chapter 7 case, captioned *In re Diamondhead Casino Corp.*, No. 24-11354 (JKS), is cited herein as "Bankr. D.I. __."

[3]     For ease of reference, the Court will cite solely to the docket of C.A. No. 25-1022-MN unless otherwise noted.

I.      **BACKGROUND**

A.      **The Debtor, MGC, and the Property**

The factual background set forth by the Bankruptcy Court in the Opinion is largely undisputed.   Prior to the bankruptcy, Appellant was the President, Chief Executive Officer, Secretary, Treasurer, and Chief Financial Officer of Diamondhead.  Appellant is also a licensed attorney.  Diamondhead has had no operations since 2000.  Diamondhead is a holding company whose most valuable asset is its interest in its wholly owned subsidiary, Mississippi Gaming Corporation ("MGC").  MGC owns approximately 400 acres of undeveloped land located in Diamondhead, Mississippi ("the Property").  On August 21, 2014, the Mississippi Gaming Commission granted approval to MGC for a 50-acre gaming site on a portion of the Property. Diamondhead has sought to develop or sell the Property for over 20 years without success. Diamondhead's September 2024 10-Q lists assets totaling $5,607,770[4] and liabilities totaling $19,855,180.13.  There are currently 21 liens on the Property totaling approximately $8.5 million.

---

[4]      Appellant takes issue with the Bankruptcy Court's statement that the Debtor's September 2024 Form 10-Q "lists the value of its land holdings at $4,691,430." (D.I. 15 at 10).    Appellant asserts that this number represents only the "cost of land held for development," and "not the value of its land holdings." (*Id*.).  "Mississippi Gaming Site Approval is essential to the value of the Diamondhead Property." (*Id*. at 19).  But the Bankruptcy Court found that evidence of the Property's value was "inconclusive." *In re Diamondhead*, 2025 WL 2169864, at *3.  Indeed, it appears that no expert testimony was presented to the Bankruptcy Court, nor were any valuations, appraisals, or letters of intent admitted into evidence, for the purpose of showing the appraised value of the Property. Appellant asserts that "the Property is now very valuable and was last appraised in January 2024, at $55.2 million," but the documents cited in Appellant's declaration were not admitted into evidence. (D.I. 16 ¶¶ 36-37).  One valuation report and two appraisals were admitted as evidence, but the parties stipulated that they were admitted solely for the purpose of showing that Diamondhead and MGC received and relied on the appraisals, not to prove the value of the Property. (*See* D.I. 18, Ex. 1, Ex. 2, and Ex. 3; *see also* Bankr. D.I. 27, 12/4/24 Tr. 53:4–54:25 (discussion regarding admissibility)).  It appears undisputed that, for more than 20 years, there has been no deal for the sale or development of the Property.

B.    **The Debentures and the Consent Judgment**

To raise capital, Diamondhead borrowed from various individuals and entities under collateralized convertible senior debentures ("the Debentures").[5]  To recover the $1,500,000 due and owing under the Debentures, in 2016, the Petitioning Creditors, other than John Hawley, filed, *inter alia*, an action against Diamondhead in this Court, *Arneault v. Diamondhead*, 16-989-LPS (D. Del. 2016) ("the 2016 District Court Action").  In December 2019, the parties entered into a settlement agreement ("the Settlement Agreement") pursuant to which Diamondhead agreed to pay Petitioning Creditors the principal owed on the Debentures, plus interest and other amounts.  Under the terms of the Settlement Agreement, if a written contract for the sale of the Property was not signed by December 31, 2021, the holders were entitled to a judgment.  That agreement was amended effective as of April 1, 2022, providing that if the Petitioning Creditors were not paid in full by March 31, 2023, they were authorized to enter into an agreed upon consent judgment.  After failing to reach further agreement for forbearance, in July 2023, the Petitioning Creditors moved to reopen the 2016 District Court Action, vacate the dismissal, and enter the consent judgment.  On September 20, 2023, the Honorable Leonard P. Stark entered the consent judgment ("the Consent Judgment"),[6] which was executed by Appellant on behalf of Diamondhead, in which Diamondhead conceded its liability to the Petitioning Creditors.  The Consent Judgment was not satisfied.

C.    **The Involuntary Petition the Motion to Dismiss or Convert**

On June 12, 2024, the Petitioning Creditors filed the involuntary petition seeking to enforce the Consent Judgment.  Diamondhead moved to dismiss the petition, or alternatively, to convert the

---

[5]    Each of the Debentures provides that it shall bear interest at a fixed rate of 4% per annum and payable annually on March 1 of each year.  The Debentures are secured by a Land Deed of Trust secured by the Property.  (*See* D.I. 16-2 & 16-3).

[6]    *Arneault v. Diamondhead*, 16-989-MN (D. Del. 2016), D.I. 75.  The action was reassigned to the undersigned judge on October 22, 2025.

3

case to a case under chapter 11. (Bankr. D.I. 9). The parties conducted depositions. (Bankr. D.I. 18-

22). The Bankruptcy Court held a two-day evidentiary hearing. (Bankr. D.I. 27, 36, 37). Post-

hearing briefing was submitted. (Bankr. D.I. 38, 39, 40). On July 30, 2025, the Bankruptcy Court

issued an Order denying the motion to dismiss or convert (Bankr. D.I. 43) ("the July 30 Order"),

accompanied by the thorough Opinion. Finding the statutory requirements of § 303(b) were met,

the Bankruptcy Court entered the Order for Relief on July 31, 2025. On August 1, 2025, George L.

Miller was appointed as Chapter 7 Trustee of the Debtor's bankruptcy estate. (Bankr. D.I. 46).

Once appointed, a trustee "is the representative of the estate," with the "capacity to sue and

be sued." 11 U.S.C. § 323. As observed by the Supreme Court:

> the Bankruptcy Code gives the trustee wide-ranging management
> authority over the debtor. In contrast, the powers of the debtor's
> directors are severely limited. Their role is to turn over the
> corporation's property to the trustee and to provide certain
> information to the trustee and to the creditors. Congress contemplated
> that when a trustee is appointed, he assumes control of the business,
> and the debtor's directors are completely ousted.

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352-53 (1985) (internal citations

and quotation marks omitted). "In short, '[o]nce appointed, the trustee assumes control over the

debtor's entire estate and all such interests' and that 'control is not limited to the corporation's

management. The trustee also assumes the sole power to prosecute legal claims on behalf of the

debtor.'" *In re 461 7th Avenue Market, Inc.*, 623 B.R. 681, 689-90 (S.D.N.Y. 2020) (quoting *Quest*

*Ventures, Ltd. v. IPA Mgmt. IV, LLC*, 2018 WL 922145, at *1-2 (E.D.N.Y. Feb. 15, 2018)).

### D.    Diamondhead's Appeal and Motions

On August 13, 2025, an attorney not retained or authorized by the Chapter 7 Trustee

purported to file on behalf of the Debtor: (1) a notice of appeal of the July 30 Order and Order for

Relief (Bankr. D.I. 50) ("the Diamondhead Appeal"), which was later withdrawn (*see* C.A. No. 25-

1018-MN, D.I. 17); (2) a motion to vacate the Bankruptcy Court's July 30 Order and Order for

Relief and dismiss the chapter 7 case, or in the alternative, to alter and amend those orders (Bankr. D.I. 48, 49) which was later withdrawn (*see* Bankr. D.I. 61) and refiled (Bankr. D.I. 63) ("the Diamondhead Motion"). Also filed without the Chapter 7 Trustee's authorization was a motion seeking a stay of the July 30 Order and Order for Relief, pending the outcome of the Diamondhead Appeal (Bankr. D.I. 47) ("the Diamondhead Stay Motion").

### E.        Appellant's First Appeal and Motions

On August 13, 2025, Appellant filed a separate notice of appeal with respect to the July 30 Order and Order for Relief (Bankr. D.I. 57) ("the First Vitale Appeal").[7] Appellant further filed a motion seeking leave to intervene in the chapter 7 case (Bankr. D.I. 55) ("Motion to Intervene") pursuant to Federal Rule of Bankruptcy 2018, which permits "an interested entity to intervene generally or in any specified matter" after hearing and upon a showing of cause. Fed. R. Bankr. P. 2018(a). Appellant argued that cause existed due to the impact that the July 30 Order and Order for Relief had or may have on her equity interests.[8] (*Id*. at 3). The Motion to Intervene also purported to join the relief sought in the Diamondhead Motion and the Diamondhead Stay Motion ("the Joinder") but advanced no separate or additional arguments.

The Diamondhead Motion alleged that, despite purporting to hold two Debentures, one of the Petitioning Creditors – "J. Steven Emerson as Successor to [J.][9] Steven Emerson Roth IRA" ("the IRA") – was not a creditor and lacked standing to file the involuntary petition under

---

[7]     *Vitale v. Arneault, et al.*, C.A. No. 25-1022-MN.

[8]     Also on August 13, 2025, Appellant filed a notice of appeal of the July 30 Order and Order for Relief on behalf of Europa Cruises Corporation Stock Ownership Plan, (Bankr. D.I. 56) ("the ESOP Appeal"), as the trustee of the ESOP. On September 17, 2025, the ESOP appeal was withdrawn and the appeal closed. (Bankr. D.I. 115; C.A. No. 25-1021, D.I. 17).

[9]     The omission of "J." on the involuntary petition was a further scrivener's error not relevant here. (*See* D.I. 9-1 at 39).

§ 303(b)(1); rather, the registered record owner of the two Debentures at issue is "Millenium Trust Company, LLC as Custodian FBO: J. Steven Emerson Roth IRA" ("the LLC"). (Bankr. D.I. 48 at 3-5). The Diamondhead Motion argued that the LLC also was not properly named as the plaintiff in the 2016 District Court Action; rather, the IRA was improperly named as the plaintiff in order to manufacture diversity of citizenship for purposes of this Court's subject matter jurisdiction. As jurisdiction was lacking, the Diamondhead Motion further contended, the Consent Judgment on which **all** Petitioning Creditors' claims are based must be considered void *ab initio*. Finally, Diamondhead argued that the underlying Debentures also are not a proper basis for any of Petitioning Creditors to file the involuntary bankruptcy because the three-year statute of limitations has now run on all of the Debentures. Notably, Diamondhead asserted that it "did not know until after all the briefs were filed in this case that there was a discrepancy with respect to the Holders of the Debentures and the parties named as Petitioners in this bankruptcy case." (Bankr. D.I. 49-7 ¶ 26). On August 28, 2025, Petitioning Creditors filed their objection to these various motions. (Bankr. D.I. 77).

### F.    The Bench Rulings

On September 3, 2025, the Bankruptcy Court heard oral argument on the various motions and ruled from the bench.

#### 1.    Standing

The Bankruptcy Court first addressed whether Diamondhead, as the alleged Debtor, and Appellant, as a creditor, had standing to pursue the various motions challenging the July 30 Order and Order for Relief.

With respect to the Diamondhead Stay Motion, the Bankruptcy Court noted that although Section 303(d) of the Bankruptcy Code and Bankruptcy Rule 1011(a) permit the alleged debtor to contest an involuntary petition, at least one court has concluded that an alleged debtor does not have

standing to seek a stay pending appeal of an order for relief once a trustee has been appointed.[10]

(*See* 9/3/25 Tr. at 46 (citing *In re 461 7th Avenue Market, Inc.*, 623 B.R. 681, 691 (Bankr. S.D.N.Y.

2020) (holding chapter 7 "Debtor has no standing to seek a stay on its own behalf; rather, the

application for a stay can be made only by the Trustee"))).[11]  As that case explains:

> "[O]nce appointed, the Trustee alone has standing to seek a stay on
> behalf of the Debtor.  If the Court were to conclude otherwise and
> recognize that the Debtor had a right to pursue the instant application
> [for stay pending appeal] – over the Trustee's opposition – the result
> would strip the Trustee of her autonomy and force her to reckon with
> a duality of authority. This conclusion would defeat the very purpose
> of appointing a trustee in a Chapter 7 proceeding. On this point, the
> Court concludes that recognizing such a duality and forcing the
> Trustee to compete for control of the Debtor's legal rights cannot be
> squared with *Weintraub*'s rule that corporate officers are 'completely
> ousted' once a trustee has been appointed.

*In re 461 7th Avenue Market*, 623 B.R. at 691 (internal quotations and citations omitted).  As part

of its thorough analysis, however, and for purposes of evaluating its motions seeking to vacate, alter,

amend, or stay the Order for Relief, the Bankruptcy Court assumed that, notwithstanding the

appointment of the Chapter 7 Trustee, Diamondhead had retained the right to challenge the July 30

Order and Order for Relief.  (9/3/25 Tr. at 46).  With respect to the Appellant's requests for relief,

on the other hand, the Bankruptcy Court quoted the Third Circuit: "[i]t is well-established that a

*creditor*, in contrast, does not have standing to contest an involuntary bankruptcy filing."  (*Id.*

(quoting *In re QDN LLC*, 363 F. App'x 873 (3d Cir. 2010))).  Thus, the Bankruptcy Court concluded

---

[10]     Arguably, the same analysis applies to a motion to vacate, alter, or amend filed on behalf of
the Debtor by someone other than the Chapter 7 Trustee.

[11]     The Bankruptcy Court also cited *In re Betteroads Asphalt, LLC*, 610 B.R. 28 (Bankr. D.P.R.
2019) as having reached a different conclusion as to whether an alleged debtor has standing
to seek a stay pending appeal of an order for relief once a trustee has been appointed.  (*See*
9/3/25 Tr. at 46).  Although the *Betteroads* case did consider a motion seeking a stay pending
the appeal of an order for relief filed by an involuntary debtor, that case involved an
involuntary chapter 11 debtor where no trustee had been appointed.

that Appellant did not have standing to contest the involuntary petition through her Joinder to the Diamondhead Motion and Diamondhead Stay Motion. (*Id.* at 46-47).

### 2.    The Diamondhead Motion to Vacate, Alter, or Amend

Assuming for purposes of the Bench Ruling that Diamondhead had standing to file it, the Bankruptcy Court determined that the Diamondhead Motion "addresses the same issues that serve as the basis for the appeal; essentially, whether the Court erred in denying the motion to dismiss and entering the [O]rder for [R]elief." (*Id.* at 48). Accordingly, the Bankruptcy Court found that, "under the divestiture-of-jurisdiction rule this Court lacks jurisdiction to hear the motions to vacate the Court's opinion and order and dismiss the involuntary petition, or, alternatively, to alter and amend the opinion and orders, other than the issue raised with respect to eligible [P]etitioning [C]reditors, which the Court will address in the context of a stay motion." (*Id.* at 48-49).

### 3.    The Diamondhead Stay Motion

Assuming, again, for purposes of the Bench Ruling, that Diamondhead had standing to file it, the Bankruptcy Court considered and denied the request for stay pending appeal. (*See id.* at 48-55). The Bankruptcy Court found that the Debtor was not likely to succeed on the merits. Relevant here, the Bankruptcy Court addressed the sole argument raised by the Debtor to justify a stay pending appeal – the validity of J. Steven Emerson ("Emerson"), as successor to the IRA, to be a Petitioning Creditor. (*Id.* at 50). The Bankruptcy Court explained that Diamondhead, after filing its motion to dismiss the involuntary bankruptcy, conducted discovery and could have raised this issue at the evidentiary hearing on the motion to dismiss, but did not, nor did it raise the issue in post-trial briefing. (*Id.* at 50-51). Rather, the Bankruptcy Court noted, Diamondhead acknowledged that each of the Petitioning Creditors was a proper creditor. (*Id.* at 51). The Bankruptcy Court also noted that the IRA is a valid holder of the Consent Judgment against the Debtor, which judgment was executed by Diamondhead. (*Id.*). Thus, "[t]o the extent there was an issue, it should have been

raised previously." (*Id.*). Moreover, the Bankruptcy Court found that this was not newly discovered evidence. (*Id.*). Rather, the Court found that "[t]he parties acknowledge this alleged error has existed for years." (*Id.*).

"[F]inally," and "most critical for purposes of this ruling," the Bankruptcy Court found that "even if there is some infirmity with respect to J. Steven Emerson IRA's standing as a creditor of Diamondhead, and assuming for purposes of the pending motion he was disqualified, the alleged infirmity is immaterial because . . . there remain seven undisputed eligible petitioning creditors and only three . . . are needed to satisfy Section 303's requirements." (*Id.* at 51-52). As such, the Bankruptcy Court ruled that even if the IRA was disqualified, "the outcome of this Court's ruling would not change" because there remain a sufficient number of unchallenged creditors to satisfy the Bankruptcy Code's requirement for the number of petitioning creditors. (*See id.* at 52).

With respect to irreparable harm, the Bankruptcy Court found that the alleged harms were speculative. (*Id.* at 53). The Bankruptcy Court noted that "[t]he sole purpose of the Chapter 7 bankruptcy is to do what Diamondhead said it was doing, without success . . . monetizing the property." (*Id.* at 53-54). Thus, the movants could not show any non-speculative harm to the Debtor. (*See id.* at 54). In contrast, the Bankruptcy Court found that a stay would be prejudicial to the Debtor's creditors. (*See id*). The Bankruptcy Court explained that, "for 20 years Diamondhead sought to develop or sell the property, or to pursue a joint venture or financing, without success." (*Id.*). The Bankruptcy Court further noted that "Diamondhead's SEC filings show the assets of the company are steadily decreasing as liabilities increase. Diamondhead has no operations, no source of income, and is unable to pay its debts as they become due." (*Id.*). In addition to the Petitioning Creditors, the Court note that there "are other debentures and loans accruing interest, additional administrative expenses continue to accrue." (*Id.* at 55). Finally, the Bankruptcy Court found that the public interest favored denial of a stay because "[b]ankruptcy is a public forum so all creditors

will have full insight and an ability to participate in the process, and have visibility and transparency with respect to the trustee's actions."  (*Id.*).

> **G.**     **Appellant's Second Appeal and Emergency Stay Motions**

On September 17, 2025, Appellant filed her second appeal (Bankr. D.I. 107),[12] which listed: (1) the July 30 Order, (2) the Opinion accompanying the July 30 Order; (3) the Order for Relief, (4) the September 4, 2025 Order Denying the Diamondhead Motion and the Diamondhead Stay Motion (Bankr. D.I. 89); and (5) the September 3, 2025 Bench Ruling (Bankr. D.I. 92).  On October 21, 2025, Appellant filed the instant Emergency Stay Motions in the above-captioned appeals.  The Emergency Stay Motions are fully briefed.  (D.I. 14, 15, 16, 18, 20.)  As noted, the appeal filed on behalf of Diamondhead with respect to the July 30 Order and the Order for Relief has been withdrawn.

**II.     JURISDICTION AND APPLICABLE STANDARD**

This Court has jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a).  Entry of order of relief in involuntary bankruptcy proceedings, and concomitantly, denial of motion to vacate such order, is a final, appealable order.  *In re Mason*, 709 F.2d 1313, 1315-18 (9th Cir. 1983).  This is because the Order for Relief is a "a final adjudication of the debtor's bankruptcy status that subjects the debtor's assets to involuntary liquidation."  *In re McGinnis*, 296 F.3d 730, 731 (8th Cir. 2002) (considering appeal of involuntary order for relief under Chapter 7); *see also In re Culp,* 550 B.R. 683, 693 (D. Del. 2015) (order denying conversion from Chapter 7 to Chapter 13 is a final order); *In re Christian,* 804 F.2d 46, 48 (3d Cir. 1986) (order denying motion to dismiss chapter 7 case is immediately appealable under the practical approach to

---

[12]     *Vitale v. Arneault, et al.*, C.A. No. 25-1167-MN.

finality because, otherwise, "the entire bankruptcy proceedings must be completed before it can be determined whether they were proper in the first place.").

"The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at \*2-3 (Bankr. D. Del. Mar. 27, 2001).  A stay pending appeal is an "extraordinary remedy." *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (quoting *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)).  The movant bears the burden of establishing that imposition of a stay is warranted.  In determining whether the moving party met its burden, courts in the Third Circuit consider the following factors:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)).  "'[T]he most critical' factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm." *Id*. (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  Because all four factors are interconnected, the Third Circuit has instructed that the analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay?  If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach.  However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id*. at 571 (internal quotations and citation omitted) (emphasis in original).

### III.  ANALYSIS

#### A.  Likelihood of Success on the Merits

##### 1.  Appellant Has Not Shown a Likelihood of Success in Establishing her Right to Challenge the Involuntary Petition

As part of its thorough Bench Ruling, the Bankruptcy Court denied the Diamondhead Motion, which sought to vacate, alter, or amend the July 30 Order and Order for Relief, concluding that the infirmity cited by Appellant would not change the outcome and that the remaining rulings were already on appeal.  (9/3/25 Tr. at 48-49).  The Bankruptcy Court further denied the Diamondhead Stay Motion based on a careful analysis of the applicable factors.  (*See id*. at 49-55).  Based on the case law cited above, however, Diamondhead's motions should have been denied as having been filed without authority and in contravention of the *Weintraub* rule that once appointed, the Debtor's directors were ousted, and the Chapter 7 Trustee had sole authority to file any such requests on behalf of the Debtor.  Simply put, by filing her Joinder, Appellant merely joined various unauthorized requests for relief in the first instance.

Further, as set forth in the Bench Ruling, Appellants' motions were denied because, as a creditor, she lacked standing to challenge the involuntary petition and prior orders under well settled Third Circuit law.  (*See* 9/3/25 Tr. at 46 (citing *In re QDN LLC*, 363 Fed. App'x 873 (3d Cir. 2010)).  As the Third Circuit in *In re QDN LLC* explained:

> [Section] 303(d) of the Bankruptcy Code allows a "*debtor . . .* [to] file any answer to a[n] [involuntary] petition." 11 U.S.C. § 303(d) (emphasis added).  It is well-established that a *creditor,* in contrast, does not have standing to contest an involuntary bankruptcy filing. The filing of an involuntary petition is an adversarial proceeding between the filers and the debtor, which may contest the filing at a hearing.  Congress chose to preclude creditors from opposing involuntary petitions because such opposition invariably was to protect a preference or to obtain some unfair advantage at the expense of other creditors, contrary to the policy of providing equitable distribution of assets among all creditors.

*In re QDN LLC*, 363 Fed. App'x at 875-76 (citations omitted).  Appellant is not the Debtor, and therefore under section 303(d) of the Bankruptcy Code and Bankruptcy Rule 1011,[13] she did not have the right to contest the involuntary petition.

Notably, Appellant's opening brief in support of the Emergency Stay Motions does not address the Bankruptcy Court's ruling on her lack of standing nor does it challenge the Third Circuit decision cited by the Bankruptcy Court.  (*See* D.I. 15).  The Petitioning Creditors, on the other hand, cite cases in their opposition which support the Bankruptcy Court's ruling as to Appellant's lack of standing.  (*See* D.I. 18 at 14 (citing *In re Schiff Fine Art, LLC*, 2024 WL 1085148, at * 7 (Bankr. S.D.N.Y. Mar. 12, 2024) (assignee for the benefit of creditors not statutorily authorized to contest involuntary petition); *In re MarketXT Holdings Corp.*, 347 B.R. 156, 160 (Bankr. S.D.N.Y. 2006) (non-debtor could not move to dismiss an involuntary proceeding, even where motion was based on petitioning creditor eligibility under § 303(b), because "the sufficiency of an involuntary petition may only be challenged by the debtor and not by creditors or third parties . . .")).

In her reply, Appellant criticizes these cases as non-binding authority.  (D.I. 20 at 4).  Appellant further notes that *In re Bear Creek Trail, LLC,* 35 F.4th 1277, 1280 (10th Cir. 2022), a decision cited by the Petitioning Creditors, supports her position.  There, the court considered who may appeal the conversion of the debtor's Chapter 11 case to Chapter 7.  The Court observed that "once a Chapter 7 trustee was appointed, the debtor's former management could no longer appeal on the debtor's behalf." *Id*. at 1281.  Nonetheless, the debtor's former management sought to appeal on behalf of the debtor and argued that "since Debtor is solvent, it has standing as an aggrieved party to challenge the conversion order and appeal that order." *Id*. at 1283.  As the *Bear Creek* court

---

[13]   Bankruptcy Rule 1011(a) provides that "[t]he debtor named in an involuntary petition may contest the petition" and further provides circumstances applicable to a partnership debtor wherein a general partner may answer a petition." Fed. R. Bankr. P. 1011(a).  No other party is authorized to contest an involuntary petition under the clear language of the Rule.

explained, "the determinative question in this case is not whether [the Debtor] has standing as a 'person aggrieved' to appeal, but whether the [the Debtor's former management] have authority to appeal on [the Debtor's] behalf.  They do not."  *Id*. at 1282 (citations omitted).  The court noted, however, that where "the debtor's managers themselves have been injured pecuniarily, they can appeal as 'persons aggrieved,'"  but "such an appeal must be brought on their own behalf, not on behalf of the debtor."  *Id*. at 1281 (quoting *In re C.W. Mining*, 636 F.3d 1257, 1259 (10th Cir. 2011) (alterations omitted)).

Although the appeal before the Court does not involve the conversion of a case from chapter 11 to chapter 7, the *Bear Creek* decision supports the proposition that a former managers lack authority to pursue an appeal of an order for relief once a Chapter 7 Trustee has been appointed. Appellant argues that she may appeal the Order for Relief and seek a stay pending appeal on an emergency basis because she meets the prudential standing requirement, which limits bankruptcy appeals to "person[s] aggrieved."  (D.I. 20 at 5).  *See Gen'l Motors Acceptance Corp. v. Dykes (In re Dykes)*, 10 F.3d 184, 187 (3d Cir. 1993).  In other words, Appellant argues that she is a person "whose rights or interests are 'directly and adversely affected pecuniarily' by [the Order for Relief]." *In re Combustion Eng'g, Inc.,* 391 F.3d 190, 214 (3d Cir. 2004), *as amended* (Feb. 23, 2005). "[P]erson[s] aggrieved" must show the order of the bankruptcy court "diminishes their property, increases their burdens, or impairs their rights."  *Id.* (quoting *In re PWS Holding Corp.,* 228 F.3d 224, 249 (3d Cir. 2000)).

Appellant cites no case in support of her contention that although she lacked authority to challenge the involuntary petition under the plain language of the Bankruptcy Code, she may not only appeal it, but, also in the meantime, seek a stay of the entire Chapter 7 case pending her appeal. Although these arguments may be more fully addressed in merits briefing, the case law presented does not demonstrate a likelihood of success.

14

### 2. Appellant Has Not Shown a Likelihood of Success in Challenging the Sufficiency of the Involuntary Petition

Even setting these arguments aside, Appellant has not demonstrated that she is likely to succeed on the merits of her challenge to the sufficiency of the involuntary petition based on her challenge to the Consent Judgment.

As this case was commenced before April 1, 2025,[14] Section 303(b) of the Bankruptcy Code permits an involuntary petition by "**three** or more entities, each of which is either a holder of a claim . . . that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least **$18,600** more than the value of any lien on property of the debtor securing such claims held by the holders of such claims." 11 U.S.C. 303(b)(1). Here, eight entities are Petitioning Creditors in the amount of the $1.5 million Consent Judgment plus attorneys' fees. The Petitioning Creditors argue that the naming of Mr. Emerson as successor to the IRA as Petitioning Creditor, as opposed to naming the LLC, is a harmless error, but even assuming that Mr. Emerson, as successor to the IRA, is eliminated as a Petitioning Creditor, the statutory requirements for filing an involuntary petition remain satisfied. The Bankruptcy Court agreed:

> And, finally -- and this is most critical for purposes of this ruling -- even if there is some infirmity with respect to J. Steven Emerson IRA's standing as a creditor of Diamondhead, and assuming for purposes of the pending motion he was disqualified, the alleged infirmity is immaterial because the petitioning creditors satisfy the statutory requirement for an involuntary petition.
>
> Specifically, assuming the removal of Emerson as a petitioning creditor, there remain seven undisputed eligible petitioning creditors and only three, three are needed to satisfy Section 303's requirements. In addition, there has been absolutely no challenge to the dollar amount of the remaining petitioning creditors. Consequently, even

---

[14]   *See* 11 U.S.C. § 104 (adjusting the dollar amount in section 303(b) from $18,600 to $21,050, effective April 1, 2025, and providing also that this adjustment does not apply with respect to cases commenced before April 1, 2025).

> disqualifying Emerson, the outcome of this Court's ruling would not
> change because there are remaining – seven remaining qualifying
> petitioning creditors who satisfy Section 303.

(9/3/25 Tr. at 51-52).

Appellant has failed to show that there is any dispute that the remaining Petitioning Creditors and the dollar amount requirements of Section 303 were met. Rather, Appellant's challenge to the July 30 Order and Order for Relief rests on the validity of the Consent Judgment: if it is invalid, Appellant asserts that none of the Petitioning Creditors were eligible to file the involuntary petition, as the statute of limitations applicable to the Debentures has now expired leaving the Debenture holders without claims. But the validity of the Consent Judgment was never before the Bankruptcy Court. Rather, the record before the Bankruptcy Court demonstrated that the Consent Judgment is in the name of the IRA, and that Mr. Emerson is the successor in interest to the IRA. The record further shows that Appellant, who executed the Consent Judgment (along with prior settlements), has made repeated admissions as to Diamondhead's liability under the various Debentures, and as to the Petitioning Creditors, including the IRA, holding the debt.

The record further supports that Diamondhead obtained years of concessions from the Petitioning Creditors by virtue of agreements approved in the District Court Action, which Appellant now asserts were all obtained by fraud. But the record supports that the discrepancy was flagged as far back as November 21, 2016, when Diamondhead filed a motion to dismiss the District Court Action for lack of subject matter jurisdiction based on its assertion that the "J. Steven Roth IRA is not a proper plaintiff based on the fact that that the relevant debentures identify 'Millenium Trust Company, LLC, Custodian FBO: J. Steven Roth IRA' as the Holder of the Instrument." (*See* C.A. No. 16-989, D.I. 20 at 7). Notwithstanding, in or about December 2019, Diamondhead entered into a settlement agreement with, among others the IRA ("the Settlement Agreement"). (*See* D.I. 16, Ex. E). The Settlement Agreement was executed by Appellant on behalf of Diamondhead, and the

16

parties agreed that "for purposes of this Settlement Agreement only, the Holder of the Debentures issued to Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA [the LLC] shall be deemed to be the J. Steven Emerson Roth IRA [the IRA]." (*Id.* at 3 (emphasis added)). The IRA was also defined as one of the plaintiffs in that agreement. Thereafter, the parties entered into an April 1, 2022 amendment, which again included the IRA. Although Appellant asserts that the Debtor "did not know until after all the briefs were filed in this case that there was a discrepancy with respect to the Holders of the Debentures and the parties named as Petitioners in this bankruptcy case," various communications around on April 13, 2023 appear to further contradict that assertion.[15]

---

[15]   On April 13, 2023, Appellant wrote the following email to Jeffrey Wurst, the Petitioning Creditors' attorney, with the subject "Diamondhead: Emerson IRA" ("the Acknowledgement Email"):

> Jeff:
> ***I am doing the list of payees to be sure they match the Holders in the notes.***
> For Emerson's IRA, you gave me "**J. Steven Emerson, as Successor to Steven Roth IRA.**"
> However, there is no Steven Roth IRA in my documents.
> This name does not match the name of the IRA in my Debenture.
> ***I have fixed it. See the attached.***
> ***Please have Steve sign the attached clean Acknowledgement***.
> Deborah

(*See* D.I. 18-2, Ex. A) (emphasis added and in original). Attached to the Acknowledgement Email were redline and clean acknowledgment forms from Appellant, to be executed by "J. Steven Emerson, as Successor to J. Steven Emerson Roth IRA (f/k/a Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA)," stating "the amount necessary to pay, in full, the debt owed to J. Steven Emerson, as Successor to J. Steven Emerson Roth IRA (f/k/a Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA) by Diamondhead Casino Corporation which is secured by a Deed of Trust on real Property owned by Mississippi Gaming Corporation . . . is $648,013.98." (*Id.*). Mr. Emerson executed the acknowledgement form ("the Acknowledgment") on April 13, 2023. (*Id.*, Ex. B). On April 13, Mr. Wurst sent the Acknowledgement, together with other documents, to Appellant. (*Id.*, Ex. C). On April 14, 2023, Mr. Wurst again sent the Acknowledgement, together with other documents, to Appellant. (*Id.*, Ex. D). No payment was ever received.

More importantly, it is unclear how Appellant may challenge the Consent Judgment now.[16]

"It is well settled that the right to pursue causes of action formerly belonging to the debtor—a form of property under the Bankruptcy Code—vests in the trustee for the benefit of the estate." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988).  Even if Appellant is acting in her capacity as a creditor or shareholder of the Debtor, as she asserts, she does not have standing to assert claims or causes of action that are property of estate.  The right to vacate any judgment against Diamondhead in the District Court Action – including the Consent Judgment against – belongs solely to the bankruptcy estate, and, thus, the Chapter 7 Trustee is the only party with standing.  *See, e.g.*, *McHale v. Alvarez (In re The 1031 Tax. Grp. LLC)*, 397 B.R. 670, 679 (Bankr. S.D.N.Y. 2008) ("When the trustee has standing to sue, the automatic stay prevents creditors or shareholders for asserting the claim notwithstanding that outside of bankruptcy, they have a right to do so.").  Appellant argues that the Chapter 7 Trustee has abandoned the cause of action, and therefore she has standing to assert it.  (D.I. 20 at 4).  This argument misses the mark.  Among other things, no notice of abandonment has been filed in the Bankruptcy Court, nor has any other representation been made that the Debtor's cause of action has been removed from the Debtor's chapter 7 bankruptcy estate.

For these reasons, Appellant has not shown a likelihood of success in prevailing on her challenge to Order for Relief.

### B.    Irreparable Harm in the Absence of a Stay

The Court agrees that the alleged harms in the Emergency Stay Motions are speculative.  The sole purpose of the Chapter 7 bankruptcy is to do that which the Debtor, through Appellant,

---

[16]    Appellant has filed a motion seeking to reopen the District Court Action and vacate the Consent Judgment  *Arneault v. Diamondhead*, C.A. No. 16-989-MN, D.I. 76 ("the Motion to Vacate").  The Chapter 7 Trustee has moved to strike the Motion to Vacate (*id.*, D.I. 83), but that motion is not yet fully briefed.

stated they were going to do: monetize the Property. Other than halting a potential sale, Appellant does not explain how staying the Order for Relief – meaning the Debtor remains in bankruptcy, the Chapter 7 Trustee remains in control, but nothing happens – would prevent irreparable harm. Appellant argues that a sale of the Property *may* result in a lower price because the sale will take place in the Chapter 7 context. But Appellant concedes that "If the Property is sold in an arms-length transaction [as opposed to an auction], all stakeholders, including [Appellant], and all creditors will be paid in full." (D.I. 15 ¶ 49). The Chapter 7 Trustee is currently seeking potential stalking horse bidders and proposes an arms-length sale of the Property and/or the Debtor's interest in the Property. (*See* Bankr. D.I. 124).

## IV.    CONCLUSION

As Appellant has failed to make the requisite showing on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary. *See In re Revel AC, Inc.*, 802 F.3d at 571. Accordingly, the Emergency Stay Motions will be denied. An appropriate order follows.