# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:

DIAMONDHEAD CASINO
CORPORATION,

Debtor.

Chapter 7

Case No. 24-11354 (JKS)

DEBORAH A. VITALE,

Appellant,

v.

EDSON ARNEAULT, *et al.*,

Appellees.

Case No. 1:25-cv-1022-MN
Case No. 1:25-cv-1167-MN

## APPELLEEES' ANSWERING BRIEF

March 6, 2026
Wilmington, DE

Jonathan M. Stemerman (No. 4510)
**ARMSTRONG TEASDALE LLP**
1007 North Market Street
Wilmington, DE 19801
Telephone: (302) 416-9667
Email: *jstemerman@atllp.com*

*Counsel to Appellees*

## CORPORATE DISCLOSURE STATEMENT

Appellees respectfully represent as follows:

1.     Argonaut 2000 Partners, L.P. has no parent company and no publicly held company holds 10% or more of the equity interests in Argonaut 2000 Partners, L.P.

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

JURISDICTION ..........................................................................................................4

STATEMENT OF THE ISSUES...................................................................................4

STANDARD OF REVIEW ...........................................................................................5

STATEMENT OF THE CASE.......................................................................................7

    A.  The Debtor and Vitale...................................................................................7

    B.  The Petitioning Creditors and the Consent Judgment.........................................8

    C.  Additional Background on the Consent Judgment ...........................................10

    D.  The Involuntary Petition and Motion to Dismiss.............................................14

    E.  The Bankruptcy Court Denies the Motion to Dismiss, Enters the Order for Relief and Appoints the Chapter 7 Trustee...................................................................16

    F.  Diamondhead (Purportedly) and Vitale Move to Vacate, Dismiss or Amend the Memorandum Opinion and Denial Order ........................................................16

    G.  Vitale Appeals the Bankruptcy Court's September 3, 2025 Ruling ...................19

SUMMARY OF THE ARGUMENT .............................................................................20

ARGUMENT..............................................................................................................22

    I.  VITALE LACKS STANDING TO CHALLENGE THE RULINGS ..............................22

    II.  THE BANKRUPTCY COURT HAS SUBJECT MATTER JURISDICTION................24

    III.  THE BANKRUPTCY COURT'S FINDINGS MUST BE AFFIRMED .........................25

        A.  THE VALUE OF THE PROPERTY IS IRRELEVANT TO THE BANKRUPTCY COURT'S DENIAL OF THE MOTION TO DISMISS ................25

        B.  THE BANKRUPTCY COURT PROPERLY DETERMINED THAT EVIDENCE OF THE VALUE OF THE PROPERTY WAS "INCONCLUSIVE" ...................................................................................27

        C.  THE BANKRUPTCY PROPERLY DETERMINED THAT THE INVOLUNTARY PETITION WAS FILED IN GOOD FAITH................................30

            1.  STANDARD FOR DETERIMING GOOD FAITH.............................................30

2.    THE PETITIONING CREDTIORS ACTED IN GOOD FAITH..........................31

a.    The Bankruptcy Court Correctly Held that the Land Deed of Trust Did Not Preclude the Filing of the Involuntary Petition.........................................32

b.    The Involuntary Petition was Not as Substitute for Customary Debt Collection Procedures .......................................................................................34

c.    The Involuntary Petition Was in the Best Interests of Creditors ...................37

d.    The Bankruptcy Court Did Not Ignore the Debtor's Argument that the Involuntary Petition was Filed to Recover Attorneys' Fees ............................38

e.    The Bankruptcy Court Properly Rejected Vitale's Other Unclean Hands Assertion ...............................................................................................39

f.    The Bankruptcy Court Properly Found a Dissipation of Assets.....................40

VI. THE BANKRUPTCY COURT PROPERLY DETERMINED CONVERSION TO CHAPTER 11 WAS UNWARRENTED ...................................................................41

CONCLUSION..............................................................................................................45

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                **Page(s)**

*Anderson v. City of Bessemer*,
  470 U.S. 564 (1985) ...............................................................................6

*Arneault et al v. Diamondhead Casino Corporation*,
  C.A. No. 1:16-cv-989-MN (D. Del.) ....................................................24

*Asociación de Titulares de Condominio Castillo v. DiMarco*,
  581 B.R. 346 (B.A.P. 1st Cir. 2018) ....................................................34

*DiFederico v. Rolm*,
  201 F.3d 200 (3d Cir. 2000) .................................................................29

*Ellis v. Westinghouse Electric Co. LLC*,
  11 F.4th 221 (3d Cir. 2021) ..................................................................26

*Fellheimer, Eichen & Braverman v. Charter Tech.*,
  57 F.3d 1215 (3d Cir. 1995) ...................................................................6

*In re Basil Street Partners, LLC*,
  477 B.R., 846 (Bankr. M.D. Fla. 2012)................................................35

*In re Bear Creek Trail*, LLC,
  35 F.4th 1277 (10th Cir. 2022)..............................................................23

*In re Better Roads Asphalt, LLC*,
  608 B.R. 7 (Bankr. D. P.R. 2019)..........................................................35

*In re Boca Vill. Ass'n*,
  422 B.R. 318 (Bankr. S.D. Fla. 2009) ..................................................34

*In re Diamondhead Casino Corp.*,
  2025 WL 3470400 (D. Del. Dec. 3, 2025) ...........................................23

*In re Forever Green Ath. Fields, Inc.*,
  804 F.3d 328 ...................................................................................30, 31

*In re Forever Green Athletic Fields, Inc.*,
  500 B.R. 413 (Bank. E.D. Pa. 2013) .....................................................35

*In re Gerald L. Nordbrock*,
  52 B.R. 370 (D.Neb. 1984)....................................................................36

*In re Int'l Zinc Coatings & Chem. Corp.*,
  355 B.R. 76 (Bankr. N.D. Ill. 2006) ......................................................34

*In re Integrated Telecom Express, Inc.*,
  384 F.3d 108, 119 (3d Cir. 2004) ..........................................................30

*In re Jade Mgmt. Servs.*,
  386 F. App'x 145 (3d Cir. 2010)..............................................................6

*In re LTL Management LLC*,
  2024 WL 3540467, 64 F.4th 84 (3d Cir. 2023)......................................26

*In re Luxeyard, Inc.*,
   556 B.R. 627 (Bank. D. Del. 2016) ................................................................. 31, 35

*In re Marciano*,
   446 B.R. 407 (Bank. C.D. Cal. 2010) ........................................................... 34, 35

*In re MarketXT Holdings Corp.*,
   347 B.R. 156 (Bankr. S.D.N.Y. 2006) ................................................................22

*In re Mid-Valley, Inc.*,
   305 B.R. 425 (Bankr. W.D. Pa. 2004)................................................................26

*In re Montgomery Ward Holding Corp.*,
   326 F.3d 383 (3d Cir.2003) ................................................................................6

*In re Myers*,
   491 F.3d 120 (3d Cir. 2007) ........................................................................6, 28

*In re Nash Eng'g Co.*,
   643 B.R. 654 (Bankr. D. Conn. 2022)................................................................34

*In re New Era Co.*,
   115 B.R. 41 (Bankr.S.D.N.Y.1990), *aff'd*, 125 B.R. 725 (S.D.N.Y.1991) ..........23

*In re NLG, LLC*,
   2023 WL 2053920 (Bank. D. Del. Feb. 13, 2023) ....................................... 42, 43

*In re Nordbrook*,
   772 F.2d 397 (8th Cir. 1985) ....................................................................... 35, 36

*In re Schiff Fine Art, LLC*,
   2024 WL 1085148 (Bankr. S.D.N.Y. Mar. 12, 2024)........................................22

*In re SemCrude, L.P.*,
   428 B.R. 590 (D. Del. 2010) ..........................................................................6, 7

*In re Tichey Elec. Co., Inc.*,
   332 B.R. 364 (Bank. N.D. Iowa 2005)................................................................36

*In re Trans World Airlines, Inc.*,
   145 F.3d 124 (3d Cir. 1998) ................................................................................5

*In re Westerleigh Dev. Corp.*,
   141 B.R. 38 (Bankr.S.D.N.Y.1992) ...................................................................23

*Marrama v. Citizens Bank of Mass.*,
   549 U.S. 365 (2007) .............................................................................. 41, 42, 43

*Oran v. Safford*,
   226 F.3d 275 (3d Cir. 2000) ..............................................................................29

*SGL Carbon Corp.*,
   200 F.3d 154 (3d Cir.1999) .................................................................................6

*Sphere Hospitality Group, LLC v. Bella Hospitality Group LLC*,
   *(In re Bella Hosp. Grp., LLC)*, 649 B.R. 200 (B.A.P. 9th Cir. 2023)........... 22, 24

*Stecyk v. Bell Helicopter Textron, Inc.*,
   295 F.3d 408 (3d Cir. 2002) .................................................................................7

**Statutes**

11 U.S.C. § 1112 .................................................................................. 42, 43

11 U.S.C. § 1307 .......................................................................................42

11 U.S.C. § 303 ......................................................................... 2, 22, 26, 27

11 U.S.C. § 706 .................................................................................. 42, 43

28 U.S.C. § 1334 .........................................................................................4

28 U.S.C. § 157 ............................................................................................4

28 U.S.C. § 158 ............................................................................................4

**Rules**

Fed. R. Bankr. P. 1010 ................................................................................22

Fed. R. Bankr. P. 1011 ................................................................................22

## INTRODUCTION

This Court should dismiss the appeals of Appellant Deborah A. Vitale ("Vitale"), as she is not the debtor in the bankruptcy case below. As she is not the debtor, she lacks standing to challenge the Involuntary Petition (defined below). Without standing, her appeals cannot proceed, and this Court need not consider any of her arguments, some of which were not raised in the Bankruptcy Court and, therefore, are waived, and all of which, regardless of waiver, are meritless.

Appellees Edson Arneault, Kathleen and James Devlin, J. Steven Emerson, Emerson Partners, J. Steven Emerson as Successor to the J. Steven Emerson Roth IRA, John Hawley as Servicing Agent for Argonaut 2000 Partners, L.P., Steven Rothstein, Barry and Irene Stark (collectively, the ("Petitioning Creditors") filed an involuntary Chapter 7 bankruptcy petition (the "Involuntary Petition") against Diamondhead Casino Corporation ("Diamondhead" or the "Debtor") after almost a decade of trying to recover on debts owed to them. The Debtor, a holding company whose primary asset is a piece of real property located in Diamondhead, Mississippi (the "Property"), was either unable or unwilling to monetize the Property to pay the overdue debts it owed not only to Petitioning Creditors, but to other creditors, as well. Among the debts that continued to accrue, include interest on the loans made by Petitioning Creditors were, salary, directors' fees, utilities, insurance and rent.

Diamondhead, lead by Vitale, challenged the Involuntary Petition in the Bankruptcy Court by filing a motion to dismiss and arguing, among other things, that (a) Petitioning Creditors did not meet the requirements of 11 U.S.C. § 303(b)(1); (b) that the Involuntary Petition was filed in bad faith; (c) that the Involuntary Petition was not in the best interests of the Diamondhead and its creditors; and (d) that, if the case was not dismissed, that the Chapter 7 be converted to Chapter 11.

The Bankruptcy Court correctly rejected each of the Diamondhead's arguments and Diamondhead itself conceded jurisdiction.  Nevertheless, it was only after the Bankruptcy Court ruled against Diamondhead, and after it issued the Order for Relief and appointed a Chapter 7 Trustee, that Diamondhead and Vitale, now also proceeding individually, raised a new argument— alleging that *one* of the eight petitioning creditors was not a proper creditor for purposes of a consent judgment, which judgment showed that Petitioning Creditors had *bona fide* debts owed to them by Diamondhead.  They argued this lone Petitioning Creditor should not have been a petitioning creditor.  The Bankruptcy Court rejected that argument as well.

Diamondhead (purportedly) and Vitale appealed both the denial of Diamondhead's motion to dismiss as well as its rejection of Diamondhead's (purportedly) and Vitale's attempt at a second bite at the apple to challenge the Involuntary Petition, though Diamondhead.  Diamondhead's appeals were withdrawn because the attorney who filed them recognized that, once the Chapter 7

Trustee was appointed, the Trustee controlled the Diamondhead and had not authorized any such appeals. That leaves only Vitale's appeals remaining. Her appeals, too, must be dismissed because she lacks standing. To the extent this Court examines the merits of Vitale's argument, those, too must be rejected and the Bankruptcy Court's rulings affirmed.

The Bankruptcy Court has subject matter jurisdiction. Daimondhead itself conceded the Bankruptcy Court had subject matter jurisdiction prior to entry of the Order for Relief and the validity of the Consent Judgment was never challenged at any point in the Bankruptcy Court. The issue is therefore waived. Even if not waived, the Consent Judgement is a valid judgment being challenged in the District Court and cannot be collaterally challenged in these appeals.

The Bankruptcy Court's factual findings were not clearly erroneous. The Bankruptcy Court's finding that the value of the Property was "inconclusive" is supported by the factual record. Regardless, the value of the Property is irrelevant, as no insolvency analysis is necessary to sustain an involuntary petition, and the Debtor conceded it was not paying its debts as they came due.

The Bankruptcy Court did not abuse its discretion in determining that the Involuntary Petition was filed in good faith. The Bankruptcy Court carefully considered the parties' arguments correctly found that the Petitioning Creditors

satisfied the *Forever Green* factors. The Involuntary Petition was filed for a proper bankruptcy purpose and was in the best interest of the Debtor and its creditors.

Finally, the Bankruptcy Court did not abuse its discretion in declining to convert the Chapter 7 to a Chapter 11. Conversion to a Chapter 11 is not automatic. A Debtor must demonstrate it meets the requirements to be a debtor under Chapter 11. Here, the Debtor could not meet those requirements because "cause" existed to convert the a Chapter 11 to Chapter 7. Specifically, the Bankruptcy Court properly found that Diamondhead did not have a reasonable likelihood of rehabilitation, lack funds to pay its debt as it became due, and was unable to sell or develop the Property on its own for over 20 years.

For all these reasons, and for the reasons more fully set forth below, the appeals should be dismissed for lack of standing. To the extent the appeals are determined on the merits, the rulings of the Bankruptcyt Court must be affirmed.

## JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 157, 158 and 1334.

## STATEMENT OF THE ISSUES

1.    Whether Vitale lacks standing to appeal the Bankruptcy Court's denial of the Debtor's Motion to Dismiss the Involuntary Petition and Vitale's Motion to Vacate.

2.    Whether the Debtor and Vitale waived the right to argue that the Bankruptcy Court lacked subject matter jurisdiction where the Debtor conceded prior to entry of the Order for Relief that subject matter jurisdiction existed.

3.    Whether, regardless of waiver, the Bankruptcy Court properly concluded that subject matter jurisdiction existed, a mixed question of law and fact.

4.    Whether the Bankruptcy Court's finding that evidence of the Property's value was "speculative" was clearly erroneous.

5.    Whether the Bankruptcy Court abused its discretion in determining that the Involuntary Petition was filed in good faith.

6.    Whether the Bankruptcy Court abused its discretion in finding that the case should not be converted from Chapter 7 to Chapter 11.

## STANDARD OF REVIEW

On appeal from an order issued by the Bankruptcy Court, a district court "review[s] the Bankruptcy Court's factual findings under a clearly erroneous standard and exercise[s] plenary review over legal issues." *In re Trans World Airlines, Inc.*, 145 F.3d 124, 130 (3d Cir. 1998) (noting that both the district court and the Third Circuit "review the bankruptcy court's legal determinations de novo, its factual findings for clear error and its exercise of discretion for abuse thereof."). Under the "clearly erroneous" standard, the Court accepts the Bankruptcy Court's findings of fact "unless that determination either is completely devoid of minimum

evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman v. Charter Tech.*, 57 F.3d 1215, 1223 (3d Cir. 1995). "The Bankruptcy Court is best positioned to assess the facts, particularly those related to credibility and purpose." *In re Myers*, 491 F.3d 120, 126 (3d Cir. 2007). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

Mixed questions of fact and law must be broken down and reviewed under the applicable standard. *See In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir.2003).

A bankruptcy court's dismissal of a bankruptcy case as a bad faith filing is reviewed for abuse of discretion. *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir.1999). It therefore follows that review of appeal of a finding that a bankruptcy was filed in good faith is also reviewed under that standard.

An abuse of discretion exists where the Bankruptcy Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Jade Mgmt. Servs.*, 386 F. App'x 145, 148 (3d Cir. 2010); *In re SemCrude, L.P.*, 428 B.R. 590, 593 (D. Del. 2010). "To show an abuse of discretion, appellants must show the district court's action was ***arbitrary, fanciful or clearly unreasonable***." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412

(3d Cir. 2002) (emphasis added). A court's "decision should not be overturned under the abuse of discretion standard, unless **no reasonable person would adopt the lower court's view**." *In re SemCrude, L.P.*, 428 B.R. at 593 (emphasis added).

## STATEMENT OF THE CASE[1]

### A.    The Debtor and Vitale

The Debtor, Diamondhead Casino Corporation, is a Delaware corporation, which has not had operations since 2000.   A0448.   Diamondhead is a holding company, whose most valuable asset is its interest in its wholly owned subsidiary, Mississippi Gaming Corporation ("MGC").   *Id.*   MGC owns approximately 400 acres of undeveloped land located in Diamondhead, Mississippi (the "Property"). *Id.* at 3-4.   On August 21, 2014, the Mississippi Gaming Commission Granted Gaming Site approval to MGC for a 50-acre gaming site on a portion of the Property. A0449.   As set forth in Diamondhead's 10-Q, its

> intent was and is to construct a casino resort and other amenities on the Property unilaterally or in conjunction with one or more joint venture partners. However, the Company has been unable, to date, to obtain financing to move the project forward and/or enter into a joint venture partnership. There can be no assurance that the substantial funds required for the design and construction of the project can be obtained or that such funds can be obtained on acceptable terms. In addition, the Company has been unable to obtain financing to sustain the Company. Due to its lack of financial resources, the Company was forced to

---

[1] The Bankruptcy Court's findings of fact are largely undisputed.   For ease of reference, Petitioning Creditors therefore largely cite to the Memorandum Opinion rather than the source documents or testimony.

> explore other alternatives, including a sale of part or all of
> the Property.

*Id*.  For over 20 years, Diamondhead sought to develop or sell the Property, and/or

pursue a joint venture or financing for the development of the Property, without

success.  *Id.*

In the past, in order to raise capital to continue to pay ongoing expenses, the

Debtor has borrowed funds through Private Placements of convertible instruments

as well as through other secured notes.  A0448.  There are currently 21 liens on the

Property totaling approximately $8.5 million.  A0449.  In addition to the money

owed to Petitioning Creditors for their Debentures (as defined below), as of the

Petition Date, Diamondhead owed over $1 million to the Debtor's former director,

Gregory Harrison, and at least $620,000 to Vitale for unpaid salary, expenses, and

rent.  A0448.

Prior to entry of the Order for Relief, Vitale was the President, Chief

Executive Officer, Secretary, Treasurer, and Chief Financial Officer of

Diamondhead, as well as a Director.  *See* A0029 at ¶ 3.  Additionally, Vitale was

President, Chief Executive Officer, Secretary, Treasurer, and Chairman of the Board

of Directors of MGC.  *Id.* at ¶ 4.  Vitale is also a lawyer.  A0186 at 126:12-126:18.

### B.    The Petitioning Creditors and the Consent Judgment

To raise capital to pay on-going costs and expenses, Diamondhead borrowed

from various individuals and entities.  A0451. The Petitioning Creditors are each

holders of collateralized convertible senior debentures (collectively, the "Debentures") memorializing the terms of the loans made to the Debtor. *Id.* Each of the Debentures provides that it shall bear interest at a fixed rate of 4% per annum and payable annually on March 1 of each year. The Debentures are secured by a Land Deed of Trust secured by the Property. *Id.*

On or about October 25, 2016, the Petitioning Creditors,[2] other than John Hawley, filed an action against Diamondhead in the United States District Court for the District of Delaware (the "2016 Action") and on or about February 28, 2019, Mr. Hawley filed an action against Diamondhead in the Superior Court of the State of Delaware (together with the 2016 Action, the "Prior Actions"). *Id.* These Prior Actions sought to recover the amount of $1,500,000 in principal, plus interest, due and owing under the Debentures. *Id.*

In December 2019, the parties entered into a settlement agreement (the "Settlement Agreement") resolving the Prior Actions and Diamondhead agreed to pay the Petitioning Creditors the principal owed on the Debentures held by the Petitioning Creditors, plus interest and other amounts. A0452; A0771. Under the terms of the Settlement Agreement, if MGC did not enter a signed written contract for the sale of

---

[2] The 2016 Action was filed in the name of the J. Steven Emerson Roth IRA (the "IRA"), J. Steven Emerson later became the successor to the IRA. As the proper name of this creditor was not at issue prior to entry of the Order for Relief, the Bankruptcy Court's Memorandum Opinion does not address this issue.

the Property by December 31, 2021, the Petitioning Creditors were entitled to a judgment based on certain agreed calculations described therein. A0452.  The parties subsequently entered into an amendment to the Settlement Agreement, effective as of April 1, 2022, providing that if the Petitioning Creditors were not paid in full by March 31, 2023, they were authorized to enter into an agreed upon consent judgment.  *Id.*

After failing to reach further agreement with Diamondhead for the Petitioning Creditors' forbearance, in July 2023, the Petitioning Creditors moved to reopen the District Court Action, vacate the dismissal, and enter judgment on consent.  *Id.*  On September 20, 2023, the District Court entered a consent judgment ("Consent Judgment") in favor of Petitioning Creditors and against Diamondhead in the principal amount of $1,500,000, plus interest and $175,000 in attorneys' fees and costs.  *Id.  See also* A0705(Consent Judgment).  Consent Judgment includes the IRA and was executed on behalf of Diamondhead by Ms. Vitale.  A0705; A0709.

### C.    Additional Background on the Consent Judgment

On or about November 21, 2016, Diamondhead filed a motion to dismiss the District Court case for lack of subject matter jurisdiction.  A0726.  Among other things, Diamondhead asserted that the "J. Stephen Roth IRA is not a proper plaintiff based on the fact that that the relevant debentures identify 'Millenium Trust Company, LLC, Custodian FBO: J. Stephen Roth IRA' as the Holder of the Instrument."  A0736; A0746.

Finding that the complaint did not properly plead an assignment, the District Court granted Diamondhead's motion to dismiss as the IRA, but granted leave to amend to allow the plaintiffs to file a second amended complaint. *Id.* On October 2, 2017, plaintiffs filed a second amended complaint in the 2016 Action (the "Second Amended Complaint"). A0748 The Second Amended Complaint alleged that the debenture had been assigned to the IRA. A0750 at ¶ 13. Diamondhead filed an answer to the Second Amended Complaint, *see* A0754 and thereafter did not again move to dismiss the matter for lack of subject matter jurisdiction or otherwise challenge the assignment.

In or about December 2019, Diamondhead entered into a settlement agreement with, among others the J. Steven Emerson Roth IRA (the "Settlement Agreement"). A0771. The Settlement Agreement was executed by Ms. Vitale on behalf of Diamondhead. A0777. As part of that Settlement Agreement, Diamondhead agreed that "for purposes of this Settlement Agreement only, ***the Holder of the Debentures issued to Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA shall be deemed to be the J. Steven Emerson Roth IRA***." A0771-72 (emphasis added). The J. Steven Emerson Roth IRA (the "IRA") was also defined as one of the Plaintiffs. A0772.

The Settlement Agreement also provided that, if no sale of the Property occurred on or before December 31, 2021, that the Plaintiffs (which includes the IRA) "will

be entitled to a Judgment" related to amounts due under the Debentures.   A0773-74.  The parties (including the IRA) subsequently entered into an amendment to the Settlement Agreement, effective as of April 1, 2022, providing that if the Petitioning Creditors were not paid in full by March 31, 2023, they were authorized to enter into an agreed upon consent judgment.   *See* A0785 (the "Amendment").    The Amendment included the IRA and Diamondhead. *Id.* The Amendment was executed by Ms. Vitale on behalf of Diamondhead.  A0789.[3]

Although Vitale asserted "I did not know until after all the briefs were filed in this case that there was a discrepancy with respect to the Holders of the Debentures and the parties named as Petitioners in this bankruptcy case,"[4] on April 13, 2023, Vitale wrote the following email to Jeffrey Wurst, the Petitioning Creditors' attorney, with the subject "Diamondhead: Emerson IRA" (the "First Acknowledgement Email"):

> Jeff:
> ***I am doing the list of payees to be sure they match the Holders in the notes.***
> For Emerson's IRA, you gave me **"J. Steven Emerson, as Successor to Steven Roth IRA."**
> However, there is no Steven Roth IRA in my documents.
> This name does not match the name of the IRA in my Debenture.
> ***I have fixed it. See the attached.***
> ***Please have Steve sign the attached clean Acknowledgement***.

---

[3] The Amendment included a form of Consent Judgment acknowledging Diamondhead's obligations to the IRA.  A0797.
[4] A0515 at ¶ 26.

Deborah

A0809(emphasis added and in original).

Attached to the First Acknowledgement Email were redline and clean acknowledgment forms from Ms. Vitale, to be executed by "J. Steven Emerson, as Successor to J. Steven Emerson Roth IRA (f/k/a Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA)", stating "), stating "**the amount necessary to pay, in full, the debt owed to J. Steven Emerson, as Successor to J. Steven Emerson Roth IRA (f/k/a Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA) by Diamondhead Casino Corporation which is secured by a Deed of Trust on real Property owned by Mississippi Gaming Corporation** located at 7051 Interstate 10, Diamondhead, Mississippi 39525, which is located in Hancock County, Mississippi, is $648,013.98" and authorizing "David A. Wheeler, Trustee, to cancel the Deed of Trust as to Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA upon the disbursement of the foregoing payoff to me."  A0810 (emphasis in original).

Mr. Emerson executed the acknowledgement form (the "Acknowledgment Form") on April 13, 2023.  A0813.  That same day, Mr. Wurst sent the Acknowledgement, together with other documents, to Ms. Vitale (the "Second Acknowledgement Email").  A0815.

On April 14, 2023, Mr. Wurst again sent the Acknowledgement, together with other documents, to Ms. Vitale (the "Third Acknowledgement Email"). A0819. No payment was ever received, so the Deed of Trust was never cancelled.

After failing to reach further agreement with Diamondhead for the Petitioning Creditors' forbearance, in July 2023, the Petitioning Creditors moved to reopen the District Court Action, vacate the dismissal, and enter judgment on consent.

### D.    The Involuntary Petition and Motion to Dismiss

On June 12, 2024, the Petitioning Creditors commenced this bankruptcy case by filing an involuntary petition (the "Involuntary Petition") under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") A0001.[5]  The Debtor filed a motion to dismiss (the "Motion to Dismiss") the Involuntary Petition or, in the alternative, convert the case to a case under Chapter 11 of the Bankruptcy Code A0009.   In the Motion to Dismiss and in a Declaration in support of the Motion to Dismiss, the then-Alleged Debtor and Ms. Vitale, respectively, acknowledged that each Petitioning Creditor, including J. Steven Emerson, as Successor to the Steven

---

[5] The Involuntary Petition inadvertently left off the "J." in front of "J. Steven Emerson Roth IRA."

Emerson Roth IRA, were proper holders of debentures.  *See* A0012, A0040-41 at ¶ 44.

Petitioning Creditors filed their Answering Brief in Opposition to Motion of the Alleged Debtor, Diamondhead Casino Corporation, to Dismiss the Involuntary Bankruptcy Petition or, in the Alternative, to Convert the Case to a Chapter 11 on September 3, 2024.  The Debtor did not file a reply.

An evidentiary hearing on the Motion to Dismiss was held on December 4, 2024, and January 16, 2025.  A0447, A0061 (Tr. 12-4-24); A0221 (Tr. 1-16-25).  The Court heard testimony from five witnesses and considered various exhibits admitted into evidence. *Id. See also* DI. 37].  On February 11, 2025, the Debtor filed its Post-Hearing Brief of the Alleged Debtor, Diamondhead Casino Corporation, in Support of its Motion to Dismiss the Involuntary Bankruptcy Petition or, in the Alternative, to Convert the Case to Chapter 11.  A0359. Petitioning Creditors filed their Post-Hearing Answering Brief on March 4, 2025. A0392.  Diamondhead filed its Reply Brief on March 14, 2025.  A0428.

### E.    The Bankruptcy Court Denies the Motion to Dismiss, Enters the Order for Relief and Appoints the Chapter 7 Trustee

On July 30, 2025, the Court issued a memorandum opinion (the "Memorandum Opinion" or "Mem. Op."), *see* A0446, and an order (the "Denial Order") denying the Motion to Dismiss.  *See* A0477.

On July 31, 2025, this Court issued the Order for Relief in an Involuntary Case (the "Order for Relief").    A0478.   On August 1, 2025, George L. Miller was appointed the Chapter 7 Trustee (the "Trustee") of the Debtor's bankruptcy estate A0479.

### F.    Diamondhead (Purportedly) and Vitale Move to Vacate, Dismiss or Amend the Memorandum Opinion and Denial Order

On August 13, 2025, a motion was filed, purportedly on behalf of the Debtor, titled Motion of the Alleged Debtor, Diamondhead Casino Corporation, to Vacate the Court's Opinion and Order Dated July 30, 2025 and Order Dated July 31, 2025 and Dismiss the Involuntary Petition or, Alternatively, to Alter and Amend the Opinion and Orders (the "Original MTV/MTD").   A0480.  A brief in support of the Original MTV/MTD was filed concurrently with the Original MTV/MTD (the "Brief in Support"), *see* A0484, as well as a Declaration from Vitale.   A0510. A notice of appeal (the "Diamondhead Notice of Appeal") was also filed on August 13, 2025, purportedly on behalf of the Debtor.

On August 13, 2025, Deborah Vitale filed an omnibus Motion of Deborah A. Vitale for Leave to Intervene and be Heard in the Above Captioned Case; and Motion to Vacate the Court's Opinion and Order Dated July 30, 2025 and Order Dated July 31, 2025 and Dismiss the Involuntary Petition or, Alternatively, to Alter and Amend the Opinion and Orders; and Stay of the Court's Opinion (D.I. 42) and Order (D.I. 43) Dated July 30, 2025 and Order (D.I. 45) Dated July 31, 2025, Pending Resolution of the Appeal the ("Vitale Motion"). A0484. The Vitale Motion sought to allow her to intervene in this bankruptcy case and is also essentially a joinder to the Original MTV/MTD and Stay Motion, and incorporates the Brief in Support. *Id.* Ms. Vitale also filed a Notice of Appeal on behalf of herself on August 13, 2025 (the "Vitale Appeal"). A0530.

On August 15, 2025, Mr. Goldberg withdrew the Original MTV/MTD [Bankr. D.I. 61] but then filed a new document, purportedly on behalf of the Debtor, entitled "Motion of the Alleged Debtor, Diamondhead Casino Corporation, to Vacate the Court's Opinion and Order Dated July 30, 2025 and Order Dated July 31, 2025 and Dismiss the Involuntary Petition or, Alternatively, to Alter and Amend the Opinion and Orders [D.I. 63] (the "Operative MTV/MTD"). A0571.

On August 28, 2025, Petitioning Creditors filed an omnibus objection to Vitale and Diamondhead's post-ruling motions. A0575.

On September 3, 2025, the Bankruptcy Court heard argument on the Debtor's and Vitale's stay motions and issued an oral ruling that same day denying the Stay Motions. A0597. Following argument, and after going through the procedural history, the Bankruptcy Court addressed the Parties' arguments. Relevant to this appeal, the Bankruptcy Court found that Vitale did not have standing to contest the involuntary petition. A0642-43.

The Bankruptcy Court also addressed the *sole argument* raised by the Debtor and Vitale to justify a stay pending appeal—the validity of Emerson, as successor to the IRA to be a petitioning creditor. A0646. The Bankruptcy Court explained that Diamondhead, after filing its motion to dismiss the involuntary bankruptcy, conducted discovery and could have raised this issue at the evidentiary hearing on the motion to dismiss, but did not, nor did it raise the issue in post-trial briefing. A0646-67. Rather, the Court noted that Diamondhead acknowledged that each of the Petitioning Creditors was a proper creditor. A0647. The Bankruptcy Court also noted that, the IRA is a valid holder of a consent judgment against the Debtor, which judgment was executed by Diamondhead. *Id.* Thus, "[t]o the extent there was an issue, it should have been raised previously." *Id.* The Bankruptcy Court further found that this was not newly discovered evidence. *Id.* Rather, the Court found that "[t]he parties acknowledge this alleged error has existed for years." *Id.*

Turning to the merits of Diamondhead and Vitale's arguments, the Court found that "most critical for purposes of this ruling", "even if there is some infirmity with respect to Emerson's standing as a creditor of Diamondhead, and assuming for purposes of the pending motion he was disqualified, *the alleged infirmity is immaterial because .… there remain seven undisputed eligible petitioning creditors and only three … are needed to satisfy Section 303's requirements*."  A0646-67. (emphasis added).  As such, the Bankruptcy Court ruled that even if Emerson was disqualified, "the outcome of this Court's ruling would not change" because there remain a sufficient number of unchallenged creditors to satisfy the Bankruptcy Code's requirement for the number of petitioning creditors.  A0648.

The Bankruptcy Court issued an order denying Vitale and Diamondhead's post-Memorandum Opinion motions on September 4, 2025 (the "Second Denial Order").  *See* A0653.

### G.    Vitale Appeals the Bankruptcy Court's September 3, 2025 Ruling

On September 17, 2025, Vitale filed her second appeal, this time appealing the Bankruptcy Court's Second Denial Order (collectively, with her first appeal, the "Appeals").  A0655.  Vitale filed Appellant's Opening Brief (hereinafter "Op. Br.") on January 22, 2026.

## SUMMARY OF THE ARGUMENT

Vitale's appeal should be dismissed, and the Bankruptcy Court's Rulings affirmed, for the following reasons:

1.      Vitale lacks standing to challenge the denial of the Motion to Dismiss, as the Bankruptcy Code only allows a debtor to challenge an involuntary petition.

2.      The Bankruptcy Court has subject matter jurisdiction.  The Debtor conceded the Bankruptcy Court had subject matter jurisdiction prior to entry of the Order for Relief and the validity of the Consent Judgment was never challenged at any point in the Bankruptcy Court.  The issue is therefore waived.  Even if not waived, the Consent Judgement is a valid judgment being challenged in the District Court and cannot be collaterally challenged here.

3.      The Bankruptcy Court's factual findings were not clearly erroneous. The Bankruptcy Court's finding that the value of the Property was "inconclusive" is supported by the factual record.  Regardless, the value of the Property is irrelevant, as no insolvency analysis is necessary to sustain an involuntary petition, and the Debtor conceded it was not paying its debts as they came due.

4.      The Bankruptcy Court did not abuse its discretion in determining that the Involuntary Petition was filed in good faith.  The Bankruptcy Court carefully considered the parties' arguments correctly found that the Petitioning Creditors

satisfied the *Forever Green* factors.  The Involuntary Petition was filed for a proper bankruptcy purpose and was in the best interest of the Debtor and its creditors.

5.    The Bankruptcy Court did not abuse its discretion in declining to convert the Chapter 7 to a Chapter 11.  Conversion to a Chapter 11 is not automatic. A Debtor must demonstrate it meets the requirements to be a debtor under Chapter 11.  Here, the Debtor could not meet those requirements because "cause" existed to convert the Chapter 11 to Chapter 7.  Specifically, the Bankruptcy Court properly found that Diamondhead did not have a reasonable likelihood of rehabilitation, lack funds to pay its debt as it became due, and was unable to sell or develop the Property on its own for over 20 years.

# ARGUMENT

## I.    VITALE LACKS STANDING TO CHALLENGE THE RULINGS

Vitale's appeals must be rejected because, as a threshold matter, she lacks standing to appeal the Bankruptcy Court's denial of Diamondhead's Motion to Dismiss and the Motions to Vacate.

Bankruptcy Code Section 303(d) and Federal Rule of Bankruptcy Procedure 1011(a) permit only the alleged debtor to contest an involuntary petition.  *See* 11 U.S.C. § 303(d); Fed. R. Bankr. P. 1011(a).[6]  *See also In re Schiff Fine Art, LLC*, 2024 WL 1085148, at *7 (Bankr. S.D.N.Y. Mar. 12, 2024) (agreeing that "only a debtor may contest an involuntary petition"); *In re MarketXT Holdings Corp.*, 347 B.R. 156, 160 (Bankr. S.D.N.Y. 2006) (finding that a non-debtor could not move to dismiss an involuntary proceeding on 303(b) petitioning creditor eligibility grounds because "the sufficiency of an involuntary petition may only be challenged by the debtor and not by creditors or third parties [...].").[7] *See also In re Bear Creek Trail*,

---

[6] A petitioning creditor is not even required to provide notice of the petition to other creditors.  Fed. R. Bankr. P. 1010(a).  If the involuntary petition is not timely controverted by the debtor, the court must enter an order for relief. 11 U.S.C. § 303(h). *See Sphere Hospitality Group, LLC v. Bella Hospitality Group LLC, (In re Bella Hosp. Grp., LLC)*, 649 B.R. 200, 205 (B.A.P. 9th Cir. 2023) (where debtor waived right to seek dismissal of involuntary case after entry of the order for relief, notwithstanding petitioning creditor was ineligible to commence involuntary case because it purchased a claim for the sole purpose of commencing the case.).

[7] A "creditor is not authorized to contest an involuntary petition because a creditor may have an incentive to protect a preference or to gain some unfair advantage [at] the expense of other creditors." *In re Westerleigh Dev. Corp.*, 141 B.R. 38, 40

LLC, 35 F.4th 1277, 1280 (10th Cir. 2022) (finding Debtor's former management could not appeal conversion of corporate debtor's Chapter 11 bankruptcy to Chapter 7 once Trustee was appointed).

It therefore follows that, just as Ms. Vitale cannot move on behalf of the Debtor or on her own to dismiss an involuntary petition or challenge a conversion to Chapter 7, once a Trustee has been appointed Ms. Vitale cannot appeal the Bankruptcy Court's denial of a motion to dismiss an involuntary petition.  This Court previously explained to Ms. Vitale that case law support Petitioning Creditors' position and that Ms. Vitale had, at that time, not present any cases in favor of her position.  *See In re Diamondhead Casino Corp*., 2025 WL 3470400, at * 7-*8 (D. Del. Dec. 3, 2025).  Vitale still has not cited a single case supporting her ability to challenge the Bankruptcy Court's ruling on Diamondhead's Motion to Dismiss.

Because Vitale lacks standing to appeal the Bankruptcy Court's Rulings, her Appeal must be dismissed.

---

(Bankr.S.D.N.Y.1992); *In re New Era Co.*, 115 B.R. 41, 45 (Bankr.S.D.N.Y.1990), *aff'd*, 125 B.R. 725 (S.D.N.Y.1991) (citing cases).

## II.    THE    BANKRUPTCY    COURT    HAS    SUBJECT    MATTER    JURISDICTION

Vitale's main argument—that the Bankruptcy Court lacked subjected matter jurisdiction because Consent Judgment is void—is false and cannot be a basis for appeal.

First, the Consent Judgment is a valid judgment.[8] Vitale's challenge fails on that ground alone.

Second, neither the Debtor nor Ms. Vitale challenged the validity of the Consent Order prior to entry of the Order for Relief.  Any ability to challenge the Petitioning Creditors' standing on that basis was therefore waived.  *See Sphere Hospitality Group, LLC v. Bella Hospitality Group LLC, (In re Bella Hosp. Grp., LLC)*, 649 B.R. 200, 205 (B.A.P. 9th Cir. 2023) (debtor waived right to seek dismissal of involuntary case after entry of the order for relief, notwithstanding petitioning creditor was ineligible to commence involuntary case because it purchased a claim for the sole purpose of commencing the case.).

So, too, here, neither Diamondhead nor Vitale challenged the Consent Judgment prior to entry of the Order for Relief.  Rather, ***Diamondhead conceded in***

---

[8] Vitale has sought to reopen the 2016 Action and vacate the Consent Judgment.  *See Arneault et al v. Diamondhead Casino Corporation*, C.A. No. 1:16-cv-989-MN (D. Del.) (the "2016 Action") at 2016 Action D.I. 79, 80. Petitioning Creditors have opposed her request on several grounds, including lack of standing. *Id.* at D.I. 84. The Trustee has also sought to strike Vitale's motion in the 2016 Action. *Id.* at D.I. 83.

*its post-trial reply brief that "the [Bankruptcy] Court has jurisdiction in this case."* A0437 (emphasis added). It was not until August 13, 2025—almost two weeks after the August 1, 2025 entry of the Order for Relief—that the Debtor and Vitale first alleged any infirmity with the Consent Judgment. Yet, the Debtor and Vitale admit that they were aware of the alleged issue no later than April 15, 2025, some 3.5 months earlier. *See* A0515-516 at ¶¶ 26-28. Indeed, despite having ample opportunity to do so, neither brought the issue to the Bankruptcy Court's attention until after the Order for Relief was entered. And even then, neither asserted that the Consent Judgment was *void ab inito*. Instead, they merely argued that the assignment to Mr. Emerson was void and that the Court lacked jurisdiction over Mr. Emerson only. A0504-505.

In fact, neither Diamondhead nor Vitale challenged the entirety of the Consent Judgement in the Bankruptcy Court *at any time*. Because this issue was *never* raised in the Bankruptcy Court, the issue has been waived, and the Bankruptcy Court's rulings affirmed.

## III. THE BANKRUPTCY COURT'S FINDINGS MUST BE AFFIRMED

### A. THE VALUE OF THE PROPERTY IS IRRELEVANT TO THE BANKRUPTCY COURT'S DENIAL OF THE MOTION TO DISMISS

Vitale spends several pages arguing that the Bankruptcy Court's determination of the value of the Property was incorrect. But, even assuming

*arguendo* that her argument is correct, Vitale never explains *why* this is relevant. It is not.

Insolvency is not required before filing for bankruptcy. *See In re LTL Management LLC*, 2024 WL 3540467, at *3 (citing *In re LTL Mgmt., LLC* ("*LTL II*"), 64 F.4th 84, 102 (3d Cir. 2023).[9] Rather, other kinds of problems justify bankruptcy relief, including "insufficient cash flows to pay liabilities." *LTL II*, 64 F.4th at 102. Here, the Debtor and Vitale admitted that the Debtor was unable to pay its debts as they became due, including loans, directors' fees and salary. *See* A0472 (citing Harrison and Vitale testimony. Indeed, Vitale testified that the Debtor is "in default of all of our major debentures and promissory notes." *Id.* (quoting Vitale testimony).

The Bankruptcy Court did not conduct an insolvency analysis, as none was required here.[10] 11 U.S.C. § 303(h) merely requires, after an involuntary petition is

---

[9] *See also*, *In re Mid-Valley, Inc.*, 305 B.R. 425, 429-30 (Bankr. W.D. Pa. 2004) ("The Bankruptcy Code does not require that a debtor be insolvent. The fact of solvency does not require a finding that the bankruptcy filing was in bad faith.").

[10] The only mention of insolvency in the Memorandum Opinion is with respect to "administrative insolvency." Mem. Op. at 28. And that was in the context of whether conversion from Chapter 7 to Chapter 11 was appropriate in this case, where the Bankruptcy Court found additional ground against conversion. *Id.* at 25-29. As the Third Circuit has explained, "Inability to pay administrative expenses is called 'administrative insolvency,' typically resulting in conversion of the Chapter 11 case to Chapter 7 liquidation." *Ellis v. Westinghouse Electric Co. LLC*, 11 F.4th 221, 233 (3d Cir. 2021).

contested, that the petitioning creditors prove that the debtor was not paying its debts as they become due. Specifically, the Bankruptcy Code provides:

> (h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—
>
> (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount; or ….

11 U.S.C. § 303(h).

As insolvency is not required for an involuntary petition to be valid, and because the Debtor and Ms. Vitale admitted that the Debtor was unable to pay its debts as they became due, the Bankruptcy Court properly determined that the Petitioning Creditors satisfied Section 303(h).

### B.    THE BANKRUPTCY COURT PROPERLY DETERMINED THAT EVIDENCE OF THE VALUE OF THE PROPERTY WAS "INCONCLUSIVE"

Even if the Property's value was of any relevance, the Bankruptcy Court's determination that the value of the Property was "inconclusive" was not clearly erroneous. In making its factual finding, the Bankruptcy Court carefully examined the testimony and evidence presented at trial in reaching its conclusion. *See* A0450.

Nevertheless, Vitale incorrectly asserts that the Bankruptcy Court took judicial notice of the value of the Property and also incorrectly ascribed a value to the Property. Op. Br. at 15-26. Vitale is wrong for multiple reasons.

First, the Bankruptcy Court made no determination of the value of the Property. Rather, after analyzing testimony from the Debtor's witnesses and the evidence submitted by the Debtor, as well as the Debtor's September 2024 10-Q, the Bankruptcy Court determined that the evidence presented as to the value of the Property was "inconclusive." A0450. In reaching this factual conclusion, the Bankruptcy Court noted "For over 20 years, there has been no deal for the sale or development of the Property. Furthermore, *no expert testimony was presented, nor were valuations, appraisals or letters of intent admitted into evidence, for the purpose of showing the appraised value of the Property.*" *Id.* (emphasis added).

Thus, despite Vitale pointing to certain testimony and evidence that she asserts ascribes a value to the Property,[11] *see* Op. Br. at 20-25, the Bankruptcy Court exercised its discretion in weighing that evidence against 20 years in which the Debtor attempted, but could not, sell the Property. *See In re Myers*, 491 F.3d 120, 126 (3d Cir.2007) ("The bankruptcy court is best positioned to assess the facts, particularly those related to credibility ..."). This Court must defer to the Bankruptcy

---

[11] While Vitale points to a Joint Exhibit 64, it should be noted that the parties only submitted Joint Exhibits 1-61 to the Bankruptcy Court [Bankr. D.I. 37] and Vitale did not designate that exhibit on appeal. *See* D.I. 4.

Court's factual findings, which are not clearly erroneous and are supported by the record. *See DiFederico v. Rolm*, 201 F.3d 200, 208 (3d Cir. 2000).

Second, the Bankruptcy Court did not state that the figure in the September 10-Q was reflective of the Properties actual market value. The Bankruptcy Court stated that the Debtor's September 2024 10-Q listed the consolidated land holdings of the Debtor and its subsidiaries at $4,691,430. A0450. The Bankruptcy Court did not state that this was the actual value of the Property. Rather, after examining and weighing all of the valuation testimony and evidence, the Bankruptcy Court made the factual determination that the value was "inconclusive."

Third, Bankruptcy Court did not take "judicial notice" of the 10-Q. The 10-Q was admitted into evidence without any challenge from the Debtor. *See, e.g.*, *Oran v. Safford*, 226 F.3d 275, 289 (3d Cir. 2000) ("we note that there is no risk of unfair prejudice or surprise here because defendants do not object to our considering the proffered form."). *See* A0357 at Ex. 32.

Fourth, because the Bankruptcy Court determined that the value of the Property was "inconclusive", even if it did take judicial notice of the September 2024 10-Q's statement, it was not taken for the truth of the matter asserted, but rather for the (undisputed) fact of what is stated in the report.

Finally, despite Vitale's assertion that the Bankruptcy Court did not give the Debtor an opportunity to be heard with respect to the September 2024 10-Q, *see* Op.

Br. at 18-19, the Debtor did in fact challenge the Petitioning Creditor's reliance on the September 2024 10-Q's statement as an indication of the value of the Property. *See* A0441.

As such, there is no basis to reverse the Bankruptcy Court's factual finding that the value of the Property was "inconclusive."

### C.    THE BANKRUPTCY PROPERLY DETERMINED THAT THE INVOLUNTARY PETITION WAS FILED IN GOOD FAITH

### 1.    STANDARD FOR DETERIMING GOOD FAITH

The Third Circuit has counseled that "the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy." *In re Forever Green Ath. Fields, Inc.*, 804 F.3d at 334 (citing *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004)).

In *Forever Green*, the Third Circuit adopted a fact-intensive "totality of the circumstances" approach for determining bad faith under section 303. *Id.* The Third Circuit explained that some factors to consider in making such a determination include whether:

> the creditors satisfied the statutory criteria for filing the petition; the involuntary petition was meritorious; the creditors made a reasonable inquiry into the relevant facts and pertinent law before filing; there was evidence of preferential payments to certain creditors or of dissipation of the debtor's assets; the filing was motivated by ill will or a desire to harass; the petitioning creditors used the filing to obtain a disproportionate advantage

for themselves rather than to protect against other creditors doing the same; the filing was used as a tactical advantage in pending actions; the filing was used as a substitute for customary debt-collection procedures; and the filing had suspicious timing.

*Id.*

In terms of allocating the burden of proof, "a petitioner is presumed to have filed its petition in good faith. As a result, an alleged debtor has the burden of showing a bad faith filing by a preponderance of the evidence." *In re Luxeyard, Inc.*, 556 B.R. 627, 642 (Bank. D. Del. 2016) (citing *Forever Green*, 804 F.3d at 335).

## 2. THE PETITIONING CREDTIORS ACTED IN GOOD FAITH

In concluding that the Petitioning Creditors acted in good faith the Bankruptcy Court carefully considered the Debtor's arguments of the Petitioning Creditors' alleged bad faith, including examining the *Forever Green* factors. *See* Mem. Op. at 12-25. In her appeal, Vitale challenges the Bankruptcy Court's determinations that (a) the existence of state law remedies, including the foreclosure procedures set forth in the Land Deed of Trust, mandated dismissal of the Involuntary Petition; (b) that the Involuntary Petition was for collecting a debt, an allegedly invalid bankruptcy purpose; and (c) that the Petitioning Creditors acted in bad faith because they did not consider the effects the Involuntary Petition would have on the Debtor and other stakeholders. Op. Br. at 26-36.

Vitale also asserts that the Bankruptcy Court "ignored" additional evidence of bad faith—namely that the Petitioning Creditors allegedly would not have filed the involuntary petition had Diamondhead paid an amount towards the Petitioning Creditors' accruing attorneys' fees.  Op. Br. at 32.

> a.   **The Bankruptcy Court Correctly Held that the Land Deed of Trust Did Not Preclude the Filing of the Involuntary Petition**

Vitale asserts that Bankruptcy Court erred when it stated that the "no evidence was presented regarding the Land Deed of Trust."  Op. Br. at 27.  It is not clear why the Bankruptcy Court made that statement, which was made in a footnote, but the error was harmless, as the Bankruptcy Court considered the Debtor's arguments related to the Land Deed of Trust.  *See, e.g.* A0458 ("Second, Diamondhead argues there are adequate state law remedies available, including a judicial foreclosure action in Mississippi as described in the Land Deed of Trust."); A0456 n. 111 & 112 (citing to Land Deed of Trust).  As such, any error related to the Bankruptcy Court's statement that no evidence was presented regarding the Land Deed of Trust is, at best, harmless error and does not serve as a basis to reverse the Bankruptcy Court's ruling.

Vitale misconstrues the Bankruptcy Court's correct determination that the Debtor abandoned its argument that the Petitioning Creditors *breached* the Land Deed of Trust.  A0457 n. 72.  Vitale interprets the Bankruptcy Court's (correct)

statement to mean that the Debtor abandoned *all* arguments concerning the document. But this interpretation is incorrect. The Debtor had previously argued that the *sole* remedy for the Petitioning Creditors to enforce the Debentures was set forth in the Land Deed of Trust. *See* A0013-A0015. But, in its post-trial opening brief, the Debtor retreated from this position, stating instead that the foreclosure procedure set forth in the Land Deed of Trust "provides *a* remedy,"[12] and that the Petitioning Creditors "have a myriad of state law remedies available to them to collect their debt."[13] As such, the Debtor abandoned its position that that it was a breach of the Land Deed of Trust to file the Involuntary Petition.

Instead, the Debtor merely argued that the Involuntary Petition was filed in bad faith because there were allegedly adequate state law remedies available for Petitioning Creditors to collect on the Consent Judgment. The Bankruptcy Court correctly rejected this argument. A0465-66. As set forth more fully below, the Bankruptcy Court correctly determined that the Petitioning Creditors' use of the bankruptcy process rather than state law collection procedures was not in bad faith, as it provided an efficient forum for addressing the issues collection and distribution of Diamondhead's assets for the benefit of all creditors. A0465.

---

[12] A0378 (emphasis in original).

[13] A0379. Vitale, too, states that the Petitioning Creditors have additional state law remedies in addition to "one in Mississippi." Op. Br. at 29.

### b.    The Involuntary Petition was Not as Substitute for Customary Debt Collection Procedures

The Bankruptcy Court correctly found that the Involuntary Petition was filed as a substitute for customary debt collection procedures.  A0465-69.  As the Bankruptcy Corut explained, "[w]hile it may be possible to collect on the Consent Judgment outside of bankruptcy, bankruptcy is an efficient forum to effectuate the orderly collection, liquidation, and distribution of the assets of a corporation, like Diamondhead, for the benefit of all creditors, particularly where there are many creditors with varying levels of priority including debts that share *pari passu* to one another."  A0469.[14]  Such use of the bankruptcy process is entirely proper.  As the United States Bankruptcy Court for the Central District of California explained in *In re Marciano*:

> In the absence of an involuntary petition, creditors can collect upon judgments only by invoking state law remedies that contain no provisions for pro rata distribution among competing creditors. In the

---

[14] The Bankruptcy Court cited to: *In re Nash Eng'g Co.*, 643 B.R. 654, 662 (Bankr. D. Conn. 2022) (explaining that when the debtor is a corporation, the only purpose of a chapter 7 case is to marshal and distribute assets as part of the fair and orderly liquidation of assets for creditors); *Asociación de Titulares de Condominio Castillo v. DiMarco (In re Asociación de Titulares de Condominio Castillo)*, 581 B.R. 346, 362 (B.A.P. 1st Cir. 2018) (holding that only purpose served in a chapter 7 case for a non-individual is the fair and orderly liquidation of assets for creditors); *In re Boca Vill. Ass'n*, 422 B.R. 318, 324 (Bankr. S.D. Fla. 2009) (agreeing that the only purpose served in a corporate chapter 7 case is the fair and orderly liquidation of corporate assets to creditors); and *In re Int'l Zinc Coatings & Chem. Corp.*, 355 B.R. 76, 85 (Bankr. N.D. Ill. 2006) (explaining that corporate chapter 7 cases serve the limited purpose of permitting the fair and orderly liquidation of corporate assets).

case of an alleged debtor who lacks sufficient funds to satisfy all judgments, like Marciano, some judgment creditors may obtain a complete recovery to the detriment of others. Such an outcome contravenes the "central policy behind involuntary petitions," which is "to protect the threatened depletion of assets or to prevent the unequal treatment of similar situated creditors. Whenever this situation is implicated, a creditor should be able to compel liquidation or reorganization of the Debtor's estate through an involuntary petition."

446 B.R. 407 (Bank. C.D. Cal. 2010) (citation omitted). *See also In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413, 425 (Bank. E.D. Pa. 2013) ("involuntary Chapter 7 petitions serve to prevent a debtor from choosing to pay certain creditors over other similarly situated creditors."); *In re Luxeyard, Inc.*, 556 B.R. 627, 640 (Bankr. D. Del. 2016) (a "creditor may use the device of an involuntary petition when bankruptcy is necessary to assure equal distribution among creditors. As such, it is proper to file an involuntary petition to 'protect against other creditors obtaining a disproportionate share of the debtor's assets.'"). Further, "[s]eeking that other creditors join in filing an involuntary petition in order to pursue debt collection in the bankruptcy court is not an improper bankruptcy purpose." *In re Better Roads Asphalt, LLC*, 608 B.R. 7, 15 (Bankr. D. P.R. 2019) (*citing In re Basil Street Partners, LLC*, 477 B.R., 846, 853 (Bankr. M.D. Fla. 2012)).

The cases cited by Vitale in support of its position to the contrary are inapposite and actually support Petitioning Creditors' use of the bankruptcy process in this instance.

*In re Nordbrook*, 772 F.2d 397 (8th Cir. 1985), involved a single creditor with "an isolated disputed claim" and where there concurrently existed "a pending case in an Iowa District Court in which [the petitioning creditor] is attempting to enforce the same claim against Nordbrook as has been asserted in this case" and "was the only obligation of the debtor not being paid in the regular course of the debtor's business." *Id*. at 399-400 (quoting *In re Gerald L. Nordbrock*, 52 B.R. 370, 371-72 (D.Neb. 1984) (quotations omitted).

*In re Tichey Elec. Co., Inc.*, 332 B.R. 364 (Bank. N.D. Iowa 2005), three unions filed an involuntary chapter 7 petition for the sole purpose of collecting debts owed to them, without regard to the creditor body as a whole. The bankruptcy court recognized that "power of an involuntary petition must be exercised for the good of the entire creditor body and for legitimate bankruptcy purposes." *Id*. at 376. As such, the court stated "[t]he goal or purpose of an involuntary filing should be the equal distribution of assets among creditors." *Id.* at 372. But that was not the case in *Tichey*. Rather, the petitioning creditors testified that did not intend to administer the case to completion; rather, they "understood that after filing, some negotiations would occur, payments would be made, and the case dismissed." *Id.* at 376.

Here, there is no question that the Debtor was not paying its debts as they come due.[15]  Further, Petitioning Creditors hold unsecured claims *pari passu* with other unsecured creditors.  To the extent Petitioning Creditors hold secured claims, those claims are held *pari passu* with other Debenture holders, as well as with holders (all or substantially all insiders) of other liens.  As the Bankruptcy Court noted, "this case involves a corporation with … numerous creditors who will reap the benefits of an orderly liquidation and distribution in accordance with the priorities set forth in the Bankruptcy Code.  Accordingly, the Bankruptcy Court did not abuse its discretion in determining that the Involuntary Petition was not being utilized as a substitute for customary debt collection practices.

### c.    The Involuntary Petition Was in the Best Interests of Creditors

Vitale argues that the Involuntary Petition should be dismissed as a bad faith filing because the Petitioning Creditors allegedly failed to consider the impact the filing would have on the Debtor, its other creditors and its shareholders.  Op. Br. at 33-34.  The Bankruptcy Court considered this argument in the context of "whether the interests of the creditors and the debtor would be better served by … dismissal."  A0474-75 (quotation omitted).    The Petitioning Creditors asserted that "the

---

[15] *See*, *e.g.* A0180 at 120:5-8 (Vitale) (Q. And is the Debtor able to pay those obligations as they come due? A. No. We're in default of all our major debentures and promissory notes".); A120 at 60:11-23 (Harrison) (Testifying that Debtor does not have funds to pay directors' fees or Mr. Harrison's accrued salary).

bankruptcy filing serves a proper purpose. Diamondhead is a corporate debtor with many debts at varying levels of priority owing to many creditors, including debts pari passu to each other. A bankruptcy proceeding is the most efficient and fair way to collect and marshal Diamondhead's assets for distribution to all creditors." *Id.* The Bankruptcy Court agreed. A0474-75

The Bankruptcy Corut properly determined that the overall best interests of the Debtor and its creditors was served by keeping the Debtor in Bankruptcy. A0475. Specifically, the Bankruptcy Court noted:

> the bankruptcy filing serves a proper purpose.Diamondhead is a corporate debtor with many debts at varying levels of priority owing to many creditors, including debts *pari passu* to each other. A bankruptcy proceeding is the most efficient and fair way to collect and marshal Diamondhead's assets for distribution to all creditors.

*Id.* As such, there is no basis to overturn the Bankruptcy Court's determination that bankruptcy was the proper vehicle to marshal and fairly distribute the Debtor's assets.

### d. The Bankruptcy Court Did Not Ignore the Debtor's Argument that the Involuntary Petition was Filed to Recover Attorneys' Fees

Contract to Vitale's assertion, the Bankruptcy Court considered the Debtor's argument that the Involuntary Petition was filed to recover attorneys' fees. The Bankruptcy Court wrote:

> As to the argument that the Involuntary Petition was filed to recover attorneys' fees, the evidence shows otherwise. Mr. Arneault testified that his motivation was to recover on the debt owed to him because he

believes his money is in danger after ten years of waiting for progress. He stated at the evidentiary hearing, "until you get it back there is no question that it's in danger. Having [the Property] have a certain value is one thing. Having the willingness to collect on any value that would pay the debenture holders is a different thing."

A0469 (citations omitted).   The Bankruptcy Court's factual determinations are subject to the clearly erroneous standard and its finding on this issue was not clearly erroneous.

### e.    The Bankruptcy Court Properly Rejected Vitale's Other Unclean Hands Assertion

Vitale asserts *all* of the Petitioning Creditors acted in bad faith because J. Stephen Emerson, as Successor to the IRA, was not a proper creditor.  <u>First</u>, as noted above, this argument was not raised to the Bankruptcy Court prior to issuance to the Order for Relief and thus has been waived.  *See, generally* A0359; A0428. Indeed, the Debtor Vitale admitted that each of the Petitioning Creditors were proper creditors and that the Bankruptcy Court had subject matter jurisdiction.  A0437 ("the [Bankruptcy] Court has jurisdiction in this case." );  .  But, even if they had not waived this argument, the Bankruptcy Court correctly rejected this argument, finding:

> And, finally -- and this is most critical for purposes of this ruling --even if there is some infirmity with respect to J. Steven Emerson IRA's standing as a creditor of Diamondhead, and assuming for purposes of the pending motion he was disqualified, the alleged infirmity is immaterial because the petitioning creditors

> satisfy the statutory requirement for an involuntary petition.
>
> Specifically, assuming the removal of Emerson as a petitioning creditor, there remain seven undisputed eligible petitioning creditors and only three, three are needed to satisfy Section 303's requirements. In addition, there has been absolutely no challenge to the dollar amount of the remaining petitioning creditors. Consequently disqualifying Emerson, the outcome of this Court's ruling would not change because there are remaining – seven remaining qualifying petitioning creditors who satisfy Section 303.

(9/3/25 Tr. at 51-52).

Accordingly, there is no basis to overturn the Bankruptcy Court's determination that the Involuntary Petition was filed in good faith.

### f.    The Bankruptcy Court Properly Found a Dissipation of Assets.

Vitale asserts that Petitioning Creditors presented no evidence of dissipation of assets. Whether there was a dissipation of assets is a factual question, subject to the clearly erroneous standard. The Bankruptcy Court determined that there was *"evidence* of dissipation."  A0462 (emphasis added).  This was based on evidence that Diamondhead's *assets* were decreasing, its liabilities were increasing and that "Diamondhead has no operations, no source of income, and is unable to pay its debts as they become due."  A0463-64.  As such, the Bankruptcy Court made a proper

factual finding that there was evidence that Diamondhead's assets were dissipating with no ability to increase its assets through operations.[16]

Vitale argues that there was evidence that the Debtor's assets were actually increasing, rather than decreasing, citing appraisal evidence that was not admitted to prove valuation.  Op. Br. at 43-44.  However, even if evidence of increasing value was to be considered, the Bankruptcy Court still found that there existed evidence of a diminution in value of the Debtor's assets, which is all that this factor requires. The Bankruptcy Court's finding was therefore not clearly erroneous.

Regardless, even if Vitale were correct—and she is not—this is but one of several *Forever Green* factors to consider when determining whether the Involuntary Petition was filed in good faith.  As such, the Bankruptcy Court properly concluded that the Involuntary Petition was not filed in bad faith.

## VI. THE BANKRUPTCY COURT PROPERLY DETERMINED CONVERSION TO CHAPTER 11 WAS UNWARRENTED

Vitale's final argument is that the Bankruptcy Court erred in denying Diamondhead's alternative request to convert the bankruptcy from Chapter 7 to Chapter 11.  Op. Br. at 46.  Vitale asserts that the Debtor had "an unqualified right

---

[16] While Vitale argues certain expenses or *liabilities* cannot be considered in a dissipation analysis "as a matter of law," she cites to no case law supporting this assertion), Op. Br. at 44-45.

to convert the case to Chapter 11", as only bad faith can defeat conversion.  *Id.*  Vitale is incorrect.

Contrary to Vitale's assertion, the Supreme Court in *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365 (2007) did *not* hold that a finding of bad faith is the only way conversion under Section 706(a) can be denied.  In fact, the Supreme Court rejected Vitale's assertion.  In *Mamarra*, which concerned a Chapter 7 debtor's attempt to convert his bankruptcy to one under Chapter 13, the Supreme Court noted that the right to conversion was expressly conditioned on the limitation set forth in Section 706(d) that "unless  case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."   The Supreme Court specifically stated that "[t]he words 'unless the debtor may be a debtor under such chapter' expressly conditioned Marrama's right to convert on his ability to qualify as a 'debtor' under Chapter 13.  *Id.* at 372.

Just as Section 1307(c) states that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause" and includes a nonexclusive list of 10 causes justifying that relief, Section 1112(b) contains a similar "for cause" limitation for Chapter 11 bankruptcies.  *Compare* 11 U.S.C. § 1307(c) *with* 11 U.S.C. § 1112(b).

This conclusion was reached *In re NLG, LLC*,  which held that "section 706(a) does not give the Debtor the absolute right to convert the chapter 7 case to a case

under chapter 11."[17]  Just as in *Marram*, the Bankruptcy Court in *NLG* found that "[c]onversion under section 706(a) is limited by the express language of section 706(d), which provides that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." *Id.*  In *NLG*, the Bankruptcy Court determined that conversion to Chapter 11 was inappropriate because "the Debtor's right to convert is expressly conditioned on NLG satisfying the requirements of the destination chapter – chapter 11." *Id.*  As the *NLG* Court explained:

> A debtor may not qualify as a "debtor" under chapter 11, if pursuant to 11 U.S.C. § 1112(b)(1), "cause" exists for the court to convert a debtor's chapter 11 case to a chapter 7 case or dismiss it. In deciding a contested motion to convert under section 706(a), with sections 706(d) and 1112(b)(4) in mind, courts consider the "totality of the circumstances," including the factors set forth in 1112(b)(4).

*Id.* at *6.

Relying on *Marrama* and *In re NLG, LLC*, the Bankruptcy Court examined whether Diamondhead "cause" existed under 1112(b), finding that such cause exists. The Bankruptcy Court based its determination by closely examining the totality of the circumstances.  As Vitale acknowledges, examining the Section 1112(b)(4) factors, the Bankruptcy Court determined that cause existed to convert or dismiss a hypothetical Diamondhead Chapter 11 because Diamondhead did not have a

---

[17] 2023 WL 2053920, at *5 (Bank. D. Del. Feb. 13, 2023).

reasonable likelihood of rehabilitation, lacked operations, lacked funds to pay its debt, had escalating debt and was unable on its own to sell or develop the Property over 20 years.  Op. Br. at 47; A0473.

Vitale states that, rather than deny the Debtor's conversion request, the "Debtor should have been allowed to convert to a Chapter 11 so as to allow Colliers International to do that what it had been hired to do, namely, to monetize the Property …. The Debtor had already hired Colliers International to do what a Chapter 7 Trustee would do, but without the additional administrative and legal fees and expenses the appointment of a Trustee would require."   Op. Br. at 50.  But Vitale's argument ignores the greater administrative costs that would accrue in Chapter 11 including, but not limited to, the Debtor's own attorneys' fees, salary, directors' fees, and utilities, insurance and rent—all of which continued to accrue until the entry of the Order for Relief.  A0472-73.  As such, the Bankruptcy Court found there was a continuing loss to the bankruptcy estate.

Additionally, Ms. Vitale conceded in her testimony that Diamondhead would need financing in order to remain in a Chapter 11 bankruptcy.  A0473 (citing Tr. Hr'g Dec. 4, 2024 (D.I. 27) at 146:7–11. (Vitale)).  As such, it is clear that a Chapter 11 would result in significant administrative expenses not present in a Chapter 7.

Exercising its discretion, the Bankruptcy Court's determination that there was no reasonable likelihood of rehabilitation was not clearly erroneous.

**CONCLUSION**

The appeals should be dismissed for lack of standing. To the extent this Court considers Vitale's challenge to in the Involuntary Petition, the Bankruptcy Court's rulings and orders should be affirmed.

March 6, 2026                              Respectfully submitted,

**ARMSTRONG TEASDALE LLP**

*/s/ Jonathan M.  Stemerman*
Jonathan M. Stemerman (No. 4510)
1007 North Market Street, Third Floor
Wilmington, Delaware 19801
Telephone: (302) 416-9670
jstemerman@atllp.com

*Counsel to the Appellees*

## <u>CERTIFICATION OF COMPLAINCE</u>

The foregoing brief complies with Federal Rule of Bankruptcy Procedure 8015 and this Court's Standing Order Regarding Briefing in all cases because it contains 9,504 words and was prepared in 14-point Times New Roman Font.


Dated: March 6, 2026                    */s/ Jonathan M. Stemerman*

                                                    Jonathan M. Stemerman (No. 4510).